No. 2--95--1444

                                    

______________________________________________________________________________

IN THE

                                    

APPELLATE COURT OF ILLINOIS

                                    

SECOND DISTRICT

______________________________________________________________________________

RICHARD G. ANDERSON and          )  Appeal from the Circuit Court

ANN T. ANDERSON, Indiv. and as   )  of Lake County.

Trustees under the Richard and   )

Ann Anderson Charitable Trust,   )  No. 93--L--796

                                 )

     Plaintiffs-Appellants,      )

                                 )

v.                               )

                                 )

FINANCIAL MATTERS, INC.,         )

ALAN M.MISALE, Indiv.,           )

THOMAS JAMES ASSOCIATES, INC.,   )

and SHIRLEY A. McKINNEY,         )  

Indiv.,                          )  Honorable

                                 )  William D. Block,

     Defendants-Appellees.       )  Judge, Presiding.

______________________________________________________________________________

     JUSTICE BOWMAN delivered the opinion of the court:

     Plaintiffs Richard G. Anderson and Ann T. Anderson appeal

three orders of the circuit court of Lake County.  The first order,

entered on October 13, 1993, granted defendants Thomas James

Associates, Inc. (Thomas James), and Shirley A. McKinney's motion

to stay the judicial proceedings and to compel arbitration.  The

second order, entered on May 18, 1995, entered judgment in favor of

Thomas James and McKinney based on an earlier arbitration award. 

The third order, entered on October 17, 1995, granted the motion

for summary judgment of defendants Financial Matters, Inc.

(Financial Matters), and Alan M. Misale.

                                BACKGROUND

     The following brief summary of the facts is taken from the

record.  On June 16, 1993, plaintiffs filed a complaint against

Financial Matters, Misale, Thomas James, McKinney, and Equitable

Life Insurance Company of America (Equitable).  The complaint

contained six counts.  

     The complaint alleged the following facts common to all

counts.  Misale has known plaintiffs since the 1980s when he was a

salesman for plaintiffs' insurance agent.  Early in 1992, Misale,

who at this time was employed by Financial Matters, proposed that

plaintiffs change their retirement and estate plan.  Misale

proposed that plaintiffs sell their stock in R.R. Donnelley & Sons

(Donnelley stock).  A substantial portion of the proceeds of this

sale would be donated to a charitable remainder unit trust (CRUT). 

The CRUT would then purchase other securities which would generate

a substantially higher income than the dividends plaintiffs

received from the Donnelley stock.  The income earned by these

securities would be paid to plaintiffs on a current basis until

they died, it would equal 10% of the fair market value of the CRUT,

and it would average at least $75,000 per year through 2003.  When

plaintiffs died, the remaining assets in the CRUT would fund a

charitable foundation.  The beneficiary of this charitable

foundation apparently was plaintiffs' son.  

     After further investigation, Misale proposed a slightly

modified plan.  This plan would create a wealth replacement trust,

which in turn would purchase a life insurance policy on Mrs.

Anderson and was payable to plaintiffs' son on her death.  The plan

would also create the CRUT.  The CRUT, which would still be funded

by the proceeds of the sale of the Donnelley stock, would invest in

debt securities.  One-half of these securities would consist of

zero-coupon United States Treasury bonds, which would have a

maturity value in 2003 equal to the value of the Donnelley stock

originally donated to the CRUT.  The remaining securities would

consist of securities that were paying and would continue to pay a

current yield greater than 10% of the fair market value of the

CRUT's assets.  This yield would be paid to plaintiffs.

     In connection with the purchase of these latter securities,

Misale introduced plaintiffs to McKinney, a registered broker at

Thomas James, a securities brokerage firm.  McKinney recommended

the purchase of income-only stripped mortgage backed securities

certificates (I/O FNMA Strips).  I/O FNMA Strips are not government

bonds.  They are derivatives based on specified pools of mortgage

loans held by the Federal National Mortgage Association (FNMA).  

     From April through June 1992, McKinney and Misale made several

representations regarding the I/O FNMA Strips.  McKinney and Misale

generally represented that investment in I/O FNMA Strips would

produce an income for plaintiffs in excess of 10% of the value of

the CRUT.  This representation was based on the assumption that the

I/O monthly payments made to the FNMA pool would not decline by

more than 1% each month.      

     In reliance on these representations, plaintiffs established

the CRUT, which they funded with the Donnelley stock.  At this

time, the stock had a market value in excess of $750,000.  Upon

Misale's recommendation, the Donnelley stock was sold and the

proceeds invested by the CRUT.  The sum of $329,000 was invested in

zero-coupon United States Treasury bonds that, if held to the

maturity date in 2003, would return a single payment of $750,000. 

The sum of $425,000 was invested in I/O FNMA Strips in interest

trust 29-2.  Plaintiffs also purchased a life insurance policy on

Mrs. Anderson.  Although plaintiffs purchased the securities

through Thomas James, the purchases were cleared through RAF

Financial Corporation (RFC), Thomas James' clearing agent.  

     According to plaintiffs, Misale and McKinney intentionally or

recklessly misrepresented or omitted to state, inter alia, that the

I/O monthly payments made to the FNMA pool had been declining at a

rate much greater than 1% per month for many months before June

1992.  The decline had in fact exceeded 4.5% per month in each of

March, April, and May 1992.  In January or February 1993,

plaintiffs discovered that the I/O FNMA Strips had an apparent

market value of approximately one-half of the amount that they paid

for them.  In March 1993 plaintiffs liquidated interest trust 29-2

for a significant loss.

     Based on these allegations, count I of plaintiffs' complaint

alleged violations of section 12 of the Illinois Securities Law of

1953 (815 ILCS 5/12 (West 1994)); count II alleged common-law

fraud; count III alleged gross violation of trust and confidence;

count IV alleged a breach of contract of the life insurance policy;

count V alleged promissory estoppel; and count VI alleged an

implied right of recovery under the life insurance policy.  Counts

I, II, and III were alleged against Financial Matters, Misale,

Thomas James, and McKinney, jointly and severally.      

     On August 20, 1993, Thomas James and McKinney filed a motion

to stay the judicial proceedings and to compel arbitration of the

claims asserted against them in plaintiffs' complaint.  According

to the motion, plaintiffs had signed a document entitled "clearing

account agreement."  Paragraph 10 of the agreement, entitled

"Arbitration," provided that all controversies which may arise

between plaintiffs and RFC and "the broker or the broker's

employees" shall be determined by arbitration.  It also stated:

       "ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED

       PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE

       STATE DESIGNATED IN PARAGRAPH 7 [Colorado] HEREOF, BEFORE AN

       ARBITRATION FACILITY PROVIDED BY THE NATIONAL ASSOCIATION OF

       SECURITIES DEALERS, INC. ('NASD') ***.

                               * * *

       THE AWARD IN SUCH ARBITRATION PROCEEDING SHALL BE FINAL, AND

       JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY

       COURT, STATE OR FEDERAL, HAVING JURISDICTION.  THE

       CONTROVERSIES AND DISPUTES WHICH ARE THE SUBJECT OF THIS

       ARBITRATION AGREEMENT INCLUDE, BUT ARE NOT LIMITED TO,

       DISPUTES UNDER FEDERAL AND STATE LAWS, INCLUDING SECURITIES

       LAWS, AND DISPUTES UNDER COMMON LAW."

          Based on this agreement, Thomas James and McKinney argued that

plaintiffs were required to submit their claims against them to

arbitration under the Federal Arbitration Act (9 U.S.C. §1 et seq.

(1988)).  On October 13, 1993, the trial court entered an order

granting the motion.  The order further provided that the claims

against Thomas James and McKinney were dismissed and that it

retained personal jurisdiction over them solely for the purpose of

enforcing an arbitration award that may thereafter be awarded.

     On February 28, 1994, plaintiffs filed their first amended

complaint.  As with the original complaint, this complaint

contained six counts; each count's allegations mirrored those

contained in the original complaint.  

     On November 17, 1993, plaintiffs filed a statement of claim

(NASD claim) against Thomas James and McKinney with the National

Association of Securities Dealers (NASD).  The NASD claim had three

counts, which were essentially identical to the first three counts

of plaintiffs' original complaint and first amended complaint.  The

only significant difference was that the only named defendants in

the NASD claim were Thomas James and McKinney.    

     On October 6, 1994, plaintiffs filed a second amended

complaint.  The complaint contained three counts.  These counts

were essentially identical to the first three counts of the

original complaint and first amended complaint.  Like the first

three counts in the earlier complaints, all three counts in this

complaint were directed against Financial Matters, Misale, Thomas

James, and McKinney, jointly and severally.  Equitable was not

named as a defendant.  For purposes of convenience, we will refer

to the second amended complaint simply as "the complaint."

     From January 11 to 13, 1995, and February 28, 1995, the NASD

arbitration panel (NASD panel) conducted a hearing on plaintiffs'

NASD claim.  At the beginning of the hearing the NASD panel stated

that all issues in the NASD claim were being put to the panel. 

Testimony was heard from nine witnesses, including, inter alia,

plaintiffs, plaintiffs' expert witness, Misale, McKinney, and

defendants' expert witnesses.  At the end of the hearing,

plaintiffs' counsel stated on the record that his clients had

presented all the evidence they had and that they had had an equal

opportunity to do so.  

     On April 7, 1995, the NASD panel issued a final written

decision.  The decision stated that, after considering the

pleadings, the testimony, and the evidence presented, it had

decided in full and final resolution of the issues submitted for

determination that plaintiffs' NASD claim was "denied and

dismissed."  No findings of fact or explanations were included in

the award.  Plaintiffs did not attempt to vacate, modify, or appeal

the award.  On May 18, 1995, Thomas James and McKinney moved the

trial court to confirm the award, which it did that same day.

     On August 8, 1995, Financial Matters and Misale filed a motion

for summary judgment.  Financial Matters and Misale argued that the

NASD award and the ensuing judgment collaterally estopped

plaintiffs from relitigating the issues that had been adjudicated

by the NASD panel.  On October 17, 1995, the trial court granted

the motion for summary judgment.  This appeal followed.

                               DISCUSSION  

     Plaintiffs have three principal contentions on appeal: (1) the

trial court erred in holding that the doctrine of collateral

estoppel barred their claims against Financial Matters and Misale;

(2) the trial court erred in holding that the doctrine of res

judicata barred their claims against Financial Matters and Misale;

and (3) the trial court erred in granting Thomas James and

McKinney's motion to stay the judicial proceedings and to compel

arbitration.  We will address each contention separately.

     Before doing so, however, we first address plaintiffs' motion

to supplement the record on appeal, which we ordered taken with the

case.  Pursuant to Supreme Court Rule 329 (134 Ill. 2d R. 329),

plaintiffs request leave to supplement the record with exhibits

that were admitted into evidence by the NASD panel during the

arbitration hearing.  Supreme Court Rule 329 (134 Ill. 2d R. 329)

provides that a party may supplement the record on appeal to

include omissions, correct errors, and settle controversies as to

whether the record accurately reflects what occurred in the trial

court.  In re Estate of Albergo, 275 Ill. App. 3d 439, 444 (1995). 

However, Rule 329 allows supplementation only with documents that

were actually before the trial court.  Albergo, 275 Ill. App. 3d at

444.  In the present case, plaintiffs have not shown that the

exhibits were before the trial court.  We therefore deny their

motion.  See Albergo, 275 Ill. App. 3d at 444.

                                     I

     Plaintiffs' first contention is that the trial court erred in

holding that the doctrine of collateral estoppel barred their

claims against Financial Matters and Misale.  Collateral estoppel

is an equitable doctrine that precludes a party from relitigating

an issue decided in a prior proceeding.  Herzog v. Lexington

Township, 167 Ill. 2d 288, 294 (1995).  The requirements for

application of collateral estoppel are (1) that the issue decided

in the prior adjudication is identical to the one presented in the

case in question; (2) that there was a final judgment on the merits

in the prior adjudication; (3) that the party against whom estoppel

is asserted was a party or in privity with a party to the prior

adjudication; and (4) that the party against whom estoppel is

asserted had a full and fair opportunity to litigate the issue in

the prior adjudication.  Congregation of the Passion, Holy Cross

Province v. Touche Ross & Co., 159 Ill. 2d 137, 152 (1994); Harmon

v. LaDar Corp., 200 Ill. App. 3d 79, 83-84 (1990).

     In the instant case, plaintiffs maintain that the first three

requirements are not present.  Plaintiffs argue that (1) the issues

decided by the NASD panel are not identical to the issues raised in

the complaint against Financial Matters and Misale; (2) the NASD

award was not a final judgment on the merits; and (3) Illinois has

not adopted the doctrine of nonmutual defensive collateral

estoppel.

     Preliminarily, we note that this is an appeal of a summary

judgment entered pursuant to section 2--1005 of the Code of Civil

Procedure (735 ILCS 5/2--1005 (West 1994)).  Summary judgment is

appropriate when there is no genuine issue of material fact and the

moving party's right to judgment is clear and free from doubt. 

Espinoza v. Elgin, Joliet & Eastern Ry. Co., 165 Ill. 2d 107, 113

(1995).  In cases involving summary judgment, we conduct a de novo

review of the evidence in the record.  Espinoza, 165 Ill. 2d at

113.

     Plaintiffs initially argue that the issues decided by the NASD

panel are not identical with the issues raised in their complaint

against Financial Matters and Misale.  Plaintiffs essentially argue

that Financial Matters and Misale cannot establish with clarity and

certainty the precise issues determined by the NASD panel. 

Plaintiffs reason that, because the NASD panel made no findings on

contested factual issues, it is impossible to ascertain whether the

issues it determined are identical to the issues raised by their

complaint against Financial Matters and Misale.  

     Financial Matters and Misale respond that the issues decided

by the NASD panel are identical to those raised in the complaint. 

They argue that the NASD claim alleged the same facts and causes of

action as those raised in the complaint, the only difference being

that, whereas the NASD claim only named Thomas James and McKinney

as defendants, the complaint named Financial Matters, Misale,

Thomas James, and McKinney as defendants.  Given these similarities

and relying on the general rule that an arbitration award need not

set out specific facts (Horwitz, Schakner & Associates, Inc. v.

Schakner, 252 Ill. App. 3d 879, 884 (1993)), Financial Matters and

Misale reason that the issues decided by the NASD panel must have

been identical to those raised by the complaint. 

     The doctrine of collateral estoppel applies only to

controlling facts or questions material to the determination of

both causes.  Congregation of the Passion, Holy Cross Province, 159

Ill. 2d at 153-54.  A judgment in a prior case operates as an

estoppel only as to the point or question actually litigated and

determined and not as to other matters which might have been

litigated and determined.  Housing Authority v. Young Men's

Christian Ass'n, 101 Ill. 2d 246, 252 (1984).  In other words, a

judgment is conclusive in a subsequent case on any issue actually

litigated and determined if its determination was essential to that

judgment.  Best Coin-Op, Inc. v. Paul F. Ilg Supply Co., 189 Ill.

App. 3d 638, 661 (1989).  A court cannot invoke the doctrine of

collateral estoppel on pure speculation as to what the trial court

found in the prior case.  LaHood v. Couri, 236 Ill. App. 3d 641,

646 (1992).

     Accordingly, in order for a former judgment to operate as an

estoppel, there must have been a finding of a specific, material,

and controlling fact in the former case, and it must conclusively

appear that the issue of fact was so in issue that it was

necessarily determined by the court rendering the judgment.  Lange

v. Coca-Cola Bottling Co. of Chicago, Inc., 44 Ill. 2d 73, 75

(1969); Smith v. Chemical Personnel Search, Inc., 215 Ill. App. 3d 

1078, 1082 (1991).  If uncertainty exists because more than one

distinct factual issue was presented in the prior case, estoppel

will not be applied.  Progressive Land Developers, Inc. v. Exchange

National Bank, 266 Ill. App. 3d 934, 944 (1994); Case Prestressing

Corp. v. Chicago College of Osteopathic Medicine, 118 Ill. App. 3d

782, 785 (1983).  Moreover, the party asserting the estoppel bears

the heavy burden of showing with certainty that the identical and

precise issue sought to be precluded in the later adjudication was

decided in the previous adjudication.  Streams Condominium No. 3

Ass'n v. Bosgraf, 219 Ill. App. 3d 1010, 1014 (1991).  To speculate

on the grounds for the prior judgment would be to remove this

burden.  LaHood, 236 Ill. App. 3d at 646.  

     Applying these principles to the case at bar, we conclude that

Financial Matters and Misale have not proved with certainty that

the identical and precise issues raised by the complaint were

actually decided by the NASD panel.  The NASD award merely stated

that plaintiffs' NASD claim, which named only Thomas James and

McKinney as defendants, was denied and dismissed.  It contained no

specific findings.  Although the NASD claim and the complaint

alleged nearly identical facts and causes of action, we simply do

not know whether the issues raised by the complaint were actually

determined by the NASD panel.  

     For example, although the NASD award could have resulted from

a finding that neither McKinney nor Misale misrepresented the

investment risks to plaintiffs, it could have also resulted from a

finding that only Misale misrepresented certain investments risks. 

Similarly, although the NASD award could have resulted from a

finding that plaintiffs were not injured by McKinney's

misrepresentations, such a finding does not mean that plaintiffs

were not injured by Misale's misrepresentations.  As a further

example, the NASD award could have resulted from a finding that

Thomas James and McKinney did not owe a duty to plaintiffs while

not even concerning itself with whether Financial Matters and

Misale did owe a duty to plaintiffs.

     The point is that we must speculate as to what the NASD panel

found when it issued the award.  Illinois law, however, is clear

that we cannot speculate on such matters--we must be certain as to

the issues that were actually and necessarily decided in the prior

case.  See, e.g., Housing Authority, 101 Ill. 2d at 252;

Progressive Land Developers, Inc., 266 Ill. App. 3d at 944. 

Because we are not certain as to the issues actually and

necessarily decided by the NASD panel, collateral estoppel does not

apply.  See Case Prestressing Corp., 118 Ill. App. 3d at 785-86

(where issues of both liability and damages are sent to jury and

jury simply returns a general verdict, collateral estoppel will not

apply because it is not certain whether the jury found against the

plaintiff on liability, on damages, or on both).  Accordingly, we

conclude that the trial court erred in granting Financial Matters

and Misale's motion for summary judgment.  As a result, we need not

address plaintiffs' remaining arguments under this contention. 

                                    II

     Plaintiffs' second contention is that the trial court erred in

holding that the doctrine of res judicata barred their claims

against Financial Matters and Misale.  We need not address this

contention, however, because our analysis of the first contention

renders this contention moot.  Moreover, the trial court did not

hold, and Financial Matters and Misale have not argued, either on

appeal or in their motion for summary judgment, that the doctrine

of res judicata barred plaintiffs' claims.  

                                    III

     Plaintiffs' third contention is that the trial court erred in

granting Thomas James and McKinney's motion to stay the judicial

proceedings and to compel arbitration.  On October 13, 1993, the

trial court entered an order that granted Thomas James and

McKinney's motion to stay the judicial proceedings and to compel

arbitration.  On May 18, 1995, the trial court entered an order

which denied and dismissed with prejudice plaintiffs' claims

against Thomas James and McKinney.  Plaintiffs argue that the trial

court erred in entering the October 13, 1993, order, which severed

their claims against Thomas James and McKinney from their claims

against Financial Matters and Misale.

     Before addressing the merits of this contention, we must first

address Thomas James and McKinney's motion to dismiss plaintiffs'

appeal of the October 13, 1993, order, which we ordered taken with

the case.  Thomas James and McKinney argue that we lack

jurisdiction to hear plaintiffs' appeal of the October 13, 1993,

order.  They argue that an order granting a motion to compel

arbitration and to stay the judicial proceedings is appealable only

under Illinois Supreme Court Rule 307(a) (155 Ill. 2d R. 307(a)),

which provides that the appeal must be perfected within 30 days

from the entry of the order.  Because plaintiffs did not perfect

the appeal of the October 13, 1993, order within 30 days, they

argue that this court lacks jurisdiction to hear that portion of

plaintiffs' appeal pertaining to the order.

     The jurisdiction of this court is limited to the review of

appeals from final judgments or orders, subject to statutory or

supreme court exceptions.  In re Petition to Incorporate the

Village of Greenwood, 275 Ill. App. 3d 465, 469 (1995). 

Interlocutory appeals as of right, as provided in Supreme Court

Rule 307(a), are one such exception.  See 155 Ill. 2d R. 307(a). 

Rule 307 provides in pertinent part:

          "(a) Orders Appealable; Time.  An appeal may be taken to

     the Appellate Court from an interlocutory order of court:

               (1) granting, modifying, refusing, dissolving, or

          refusing to dissolve or modify an injunction;

                                   * * *

     Except as provided in paragraph (b), the appeal must be

     perfected within 30 days from the entry of the interlocutory

     order by filing a notice of appeal designated 'Notice of

     Interlocutory Appeal' conforming substantially to the notice

     of appeal in other cases."  155 Ill. 2d R. 307(a)(1).

     A motion to compel or stay arbitration is analogous to a

motion for injunctive relief.  Amalgamated Transit Union, Local 900

v. Suburban Bus Division of the Regional Transportation Authority,

262 Ill. App. 3d 334, 337 (1994); Robert A. Besner & Co. v. Lit

America, Inc., 214 Ill. App. 3d 619, 623 (1991).  Thus, an order

granting a motion to compel or stay arbitration is an interlocutory

order appealable under Rule 307(a)(1).  Amalgamated Transit Union,

Local 900, 262 Ill. App. 3d at 337; Robert A. Besner & Co., 214

Ill. App. 3d at 623.  A notice of interlocutory appeal must be

filed within 30 days of such an order.  155 Ill. 2d R. 307(a)(1).

     In the present case, the order granting Thomas James and

McKinney's motion to compel arbitration and to stay the judicial

proceedings was entered on October 13, 1993.  This order was an

interlocutory order under Rule 307(a)(1).  See, e.g., Notaro v.

Nor-Evan Corp., 98 Ill. 2d 268, 270-71 (1983) (order granting or

denying a motion to compel arbitration and stay court proceedings

or dismiss the lawsuit is appealable under Rule 307(a)(1)). 

Plaintiffs therefore could have filed a notice of interlocutory

appeal within 30 days of that order.  

     However, the issue is not whether plaintiffs could have filed

a notice of interlocutory appeal when the court issued the October

13, 1993, order, but whether they had to.  In other words, does a

party's failure to appeal an interlocutory order under Rule

307(a)(1) preclude our review of that order when a final judgment

is entered in the case?   

     When analyzing a supreme court rule, we must ascertain and

give effect to the supreme court's intent.  Kellett v. Roberts, 276

Ill. App. 3d 164, 170 (1995).  The same rules for statutory

construction apply to supreme court rules.  Kellett, 276 Ill. App.

3d at 170.  Statutory construction begins with the plain meaning of

the language employed and ends there when the meaning is clear. 

Alpine Bank v. Yancy, 274 Ill. App. 3d 766, 768 (1995).  When the

language of a supreme court rule is plain and unambiguous, courts

will not read in exceptions, limitations, or other conditions. 

People v. Daniels, 172 Ill. 2d 154, 163 (1996). 

     Here, the language of Rule 307(a)(1) is plain and unambiguous:

a party is not required to appeal a Rule 307(a)(1) interlocutory

order in order to preserve later review of that order.  Rule

307(a)(1) provides only that an appeal "may" be taken from an

interlocutory order that grants a motion to compel arbitration or

to stay the proceedings.  155 Ill. 2d R. 307(a)(1).  As a rule of

statutory construction, the word "may" is permissive or

discretional as opposed to mandatory.  Alpine Bank, 274 Ill. App.

3d at 768; Lake States Engineering Corp. v. One Naperville Corp.,

148 Ill. App. 3d 836, 841 (1986).  Because Rule 307(a)(1) does not

require a party to appeal the interlocutory order, a reviewing

court may still review the merits of that order after a final

judgment in the case is rendered and appealed from. Alpine Bank,

274 Ill. App. 3d at 768; see People v. Franklin, 159 Ill. App. 3d

56, 60 (1987).

     Thus, while plaintiffs could have appealed the October 13,

1993, order within 30 days of its entry under Rule 307(a)(1), they

were not required to do so.  See Alpine Bank, 274 Ill. App. 3d at

768.  Instead, plaintiffs waited to appeal until a final judgment

disposing of all the parties and all the claims was rendered in the

case--that is, the October 17, 1995, order granting Financial

Matters and Misale's motion for summary judgment.  As such, we have

jurisdiction to consider the merits of the October 13, 1993, order. 

See Alpine Bank of Illinois, 274 Ill. App. 3d at 768.

     We are aware that other courts have apparently reached a

contrary result. See, e.g., Hwang v. Tyler, 253 Ill. App. 3d 43,

45-46 (1993); Williams v. Nagel, 251 Ill. App. 3d 176, 179 (1993);

Safeway Insurance Co. v. American Arbitration Ass'n, 247 Ill. App.

3d 355, 358 (1993); Robert A. Besner & Co., 214 Ill. App. 3d at

623; Baird & Warner, Inc. v. Gary-Wheaton Bank, 122 Ill. App. 3d

136, 138-39 (1984).  However, those cases neither considered the

plain language of Rule 307(a) nor interpreted that language in

accordance with accepted rules of statutory construction.  We

therefore decline to be guided by those cases to the extent they

hold that the right to challenge a Rule 307(a)(1) order is

permanently lost if a party does not appeal the order within 30

days.

     In contrast, we believe our recent decision in Alpine Bank, a

case cited by none of the parties, is persuasive.  See Alpine Bank,

274 Ill. App. 3d at 768.  In Alpine Bank, we applied established

rules of statutory construction to Rule 307(a).  After doing so, we

held that a party does not have to appeal a Rule 307(a)

interlocutory order to preserve later review of that order.  Alpine

Bank, 274 Ill. App. 3d at 768.  In our opinion, this approach--

which we follow here today--properly analyzed the jurisdictional

scope of Rule 307(a) by considering its language in light of

general principles of statutory construction.

     We therefore turn to the merits of the contention.  In

granting Thomas James and McKinney's motion to stay the judicial

proceedings and to compel arbitration, the trial court severed

plaintiffs' claims against Thomas James and McKinney from their

claims against Financial Matters and Misale.  Plaintiffs argue that

the trial court erred in doing so because (1) the arbitration

agreement did not involve Financial Matters and Misale; (2) the

claims against all of the parties were interdependent; and (3)

arbitration would result in duplicative litigation with the

possibility of inconsistent results.  Plaintiffs cite J.F. Inc. v.

Vicik, 99 Ill. App. 3d 815 (1981), for the proposition that

judicial economy and the avoidance of inconsistent results require

a trial court to deny a motion to compel arbitration.

     The trial court did not err in severing the claims.  The

United States Supreme Court has held that "[u]nder the [Federal]

Arbitration Act, an arbitration agreement must be enforced

notwithstanding the presence of other persons who are parties to

the underlying dispute but not to the arbitration agreement." 

(Emphasis added.)  Moses H. Cone Memorial Hospital v. Mercury

Construction Corp., 460 U.S. 1, 20, 74 L. Ed. 2d 765, 782, 103 S.

Ct. 927, 939 (1983).  The Supreme Court has also held that the

Federal Arbitration Act requires courts to compel arbitration of

pendent arbitrable claims, even where the result would be the

possibly inefficient maintenance of separate proceedings in

different forums.  Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213,

217, 84 L. Ed. 2d 158, 163, 105 S. Ct. 1238, 1241 (1985).

     We note that Illinois courts also hold that arbitration is a

favored method of settling disputes in Illinois, and the policy

favoring arbitration will not be ignored simply because multiple

parties and claims may be present.  See Landmark Properties, Inc.

v. Architects International-Chicago, 172 Ill. App. 3d 379, 384

(1988); see, e.g., M.D. Building Material Co. v. 910 Construction

Venture, 219 Ill. App. 3d 509, 519 (1991) (rejecting "judicial

economy argument" as a bar to the enforcement of valid arbitration

agreements); Atkins v. Rustic Woods Partners, 171 Ill. App. 3d 373,

380 (1988) (noting that in general an arbitration agreement is

enforceable despite the existence of claims by third parties or of

pending multiparty litigation); Diersen v. Joe Kiem Builders, Inc.,

153 Ill. App. 3d 373, 377 (1987) (noting that the general rule in

Illinois is that "arbitration agreements in multiparty litigation

should be enforced despite the existence of claims which create the

potential for duplicative proceedings").  We further note that

Vicik, the case principally relied upon by plaintiffs, is

inconsistent with prevailing case law, and Illinois courts have

repeatedly criticized and distinguished it.  See M.D. Building

Material Co., 219 Ill. App. 3d at 519; Kurland Steel Co. v. Carle

Foundation Hospital, 185 Ill. App. 3d 624, 627-29 (1989); Landmark

Properties, Inc., 172 Ill. App. 3d at 384; Geldermann, Inc. v.

Mullins, 171 Ill. App. 3d 255, 261 (1988); Diersen, 153 Ill. App.

3d at 377.  We likewise choose not to follow Vicik.

     In light of the foregoing cases, we conclude that the trial

court did not err in granting the motion to stay the judicial

proceedings and to compel arbitration.  Although plaintiffs'

argument is well taken, prevailing federal and state case law

compelled the trial court to grant the motion and thereby sever the

claims.  Also, we affirm the May 18, 1995, order which entered

judgment for Thomas James and McKinney based on the NASD award,

because the trial court properly compelled arbitration, and because

plaintiffs do not otherwise explain why the trial court improperly

entered that order.  See 9 U.S.C. §9 (1988); see also Menke v. 

Monchecourt, 17 F.3d 1007, 1009 (7th. Cir. 1994) ("Unlike the usual

civil appeal, where the successful party is usually defending the

lower court's decision on the merits, an action for confirmation

under 9 U.S.C. §9 is intended to be a summary proceeding that

merely makes the arbitrators' award a final, enforceable  judgment

of the court"); Taylor  v. Nelson, 788 F.2d 220, 225  (4th Cir.

1986) ("A confirmation proceeding under 9 U.S.C. §9 is intended to

be summary: confirmation can only be denied if an award has been

corrected, vacated, or modified in accordance with the Federal

Arbitration Act").

                                CONCLUSION

     The judgment of the circuit court of Lake County is affirmed

in part and reversed in part.  Plaintiffs' motion to supplement the

record on appeal is denied.  Thomas James and McKinney's motion to

dismiss plaintiffs' appeal of the October 13, 1993, order is

denied.  The cause is remanded for further proceedings consistent

with this opinion.

     Affirmed in part and reversed in part; cause remanded; motion

to supplement the record on appeal is denied; motion to dismiss

appeal of the October 13, 1993, order is denied.

     INGLIS and DOYLE, JJ., concur.