THIRD DIVISION

June 28, 2000

No. 1--98--4749

BEVERLY GROSSMAN, Special     ) Appeal from the 

Administrator of the ESTATE OF               ) Circuit Court of

BARRY GROSSMAN, Deceased,         ) Cook County.

     )

Plaintiff-Appellant,     )

          ) 

                      v.                     )

                     )

WALTER GEBAROWSKI,                    ) Honorable

     ) John V. Virgilio,

Defendant-Appellee.      ) Judge Presiding.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff Beverly Grossman, special administrator of the Estate of Barry Grossman (the decedent), appeals from an order of the circuit court granting judgment on a jury verdict in favor of defendant Walter Gebarowski and from an order denying plaintiff's post-trial motions for judgment notwithstanding the verdict (judgment 
n.o.v.
) and for a new trial in a negligence action filed by plaintiff against defendant pursuant to the Wrongful Death Act (740 ILCS 180/1 
et seq. 
(West 1992)) 
and the Survival Act (755 ILCS 5/27--6 
(West 1992)).
(footnote: 1)  Plaintiff contends on appeal that the trial court committed reversible error by depriving plaintiff of the assurance of a jury that was free from bias or prejudice and by instructing the jury with two separate, nearly consecutive instructions concerning a pedestrian's duty while "crossing a roadway" without also instructing the jury that drivers owe a duty to a pedestrian "crossing a roadway."  For the reasons set forth below, we reverse and remand for a new trial.

On November 25, 1992, the decedent, Barry Grossman, a disabled person who had been suffering from cerebral palsy, was crossing Milwaukee Avenue on foot north of its intersection with Central Road and south of the entrance to the Triumvera housing complex in Northfield Township when he was struck and killed by an automobile owned and operated by defendant, Walter Gebarowski.  Plaintiff, Beverly Grossman, subsequently filed a two-count complaint against defendant and on behalf of herself and Robert Grossman, as the decedent's parents, and on behalf of the decedent's brother and sister.  Plaintiff alleged that defendant had negligently operated his automobile and that his alleged negligence had been a proximate cause of the decedent's death.  Defendant denied both that he had been negligent and that he had caused or contributed to cause the decedent's death.  Defendant claimed, as an affirmative defense, that the decedent had violated his duty to use ordinary care for his own safety by failing to maintain a proper lookout for vehicles on the roadway, by failing to cross the street within a crosswalk, and by being otherwise careless and negligent.  

Prior to trial, the trial court advised counsel that it alone, during jury selection, was going to ask the prospective jurors only those questions previously submitted by counsel that it thought were "relevant."  The court further advised counsel that they could proffer supplemental written questions, but the court specified that only it would ask those supplemental questions it, again, thought were "relevant."  Specifically, in establishing its jury selection process, the court stated:

"There will be five challenges on each side.  I will be doing the questioning in this case.  The attorneys have submitted jury questions to me that they would like me to ask.  I will ask those questions if I think they are relevant, and I will not ask those questions I don't think are relevant."

In response to an inquiry posited by plaintiff's counsel whether the court would permit him to supplement the court's 
voir dire 
examination, the trial court responded:

"Yes, but in writing. *** When I ask if you have any challenges, if you think I need to ask more questions or a couple more questions, write them down in writing and give them to me and, again, if I think they are relevant, I'll ask them.  If I don't I won't."

Defendant's counsel then questioned the procedure, stating:

"Your Honor *** I do understand your Honor's policy regarding not allowing lawyers to ask questions.  Since this is a wrongful death case, I want to put on the record that I do request the option of asking questions to this jury on behalf of [defendant].  I have entered written questions to the Court because that's what we were told to do, but at this point I want to put on the record a request to ask oral questions."

Stating its "reasoning" for its selection process, the court responded that it could not

"get jurors to serve on the jury, whatever conceivable excuse, and it's been getting progressively worse.

When I came here in this division in December of 1980, it was so easy to select a jury, even if they were going to go for two, three, four weeks.  Now they don't even want to go one, two, three days.  And I do this, I assert my authority and ask them direct questions trying to get 12 fair and impartial jurors.

I know the Supreme Court Rule says the attorneys shall participate, but I have the written questions and any questions they may have after, I ask if they have challenges.  I ask their participation in order to ensure getting a jury, and that's the reasoning behind the way I select the jury."  

Subsequent to the court's remarks, plaintiff joined in defendant's request for leave to conduct oral questioning of the jurors, stating, "Your Honor, just for the record as well, we too would join in the request for leave to conduct oral questioning ourselves for the same reasons [as those stated by defendant's counsel]."     The trial court then began its own questioning of the prospective jurors by informing the venire about the nature of the case, the location of the accident, the names of the parties and their counsel, a brief description of the parties' contentions, and the names of potential witnesses.  Immediately thereafter, the court questioned each prospective juror.  In general, the court inquired about each juror's residence, occupation, employer, and marital status; the ages and sexual identity of any children; the occupations of a spouse or ex-spouse, either parent, and any children, in-laws or siblings; any prior jury service; any involvement in lawsuits; the relationship, if any, to anyone injured or killed in an automobile accident; whether the juror drove; the juror's educational background; any history of cerebral palsy or other disability in the juror's family background or close net of friends; and whether or not the juror could give both sides a fair trial.  

If a prospective juror disclosed information in response to the trial court's questions, the court would then ask follow-up questions.  For example, if a prospective juror disclosed a prior lawsuit and accident history, the court inquired about the nature of both the accident and the injuries sustained, whether a claim had been made, the name of the retained attorney, and the disposition of the claim.  If a prospective juror disclosed that a family member or close friend had been involved in an accident, the court asked the juror to describe the nature of the accident and any injuries sustained.  When a prospective juror disclosed that she and her spouse had been injured at work and had filed workers' compensation claims, the court asked whether that experience would prevent the prospective juror from "in any way" giving the parties a fair trial.  If a prospective juror disclosed any relationship to disabled persons, the court asked further questions to uncover the nature and extent of the disability.

The trial court, during the course of jury selection, excused one venire person who was currently a party to a lawsuit, four venire persons who claimed to have scheduling conflicts, and four venire persons who expressed doubt about their ability to be fair and impartial.

Subsequent to the 
voir dire
 examination and the empaneling of the jury, the following uncontroverted evidence was presented at trial which commenced on August 31, 1998.  Defendant's automobile had come into contact with the decedent when the decedent, who had been wearing dark clothing, had been walking on or across a four-

lane highway at neither an intersection nor a crosswalk and in a dark and unlit area.  The weather conditions were rainy, misty, and foggy, and the speed limit was 40 miles per hour.  An independent eyewitness, who had been traveling 30 to 40 feet behind defendant's vehicle, testified that he had seen the decedent "simply walk directly into defendant's line of travel."  The decedent was killed as a result of his impact with the front bumper of defendant's vehicle, an impact causing the decedent to be flipped up onto defendant's windshield.    

Further uncontroverted evidence indicated that defendant held a valid driver's license with a right rearview mirror restriction.  Defendant stated that, while he drove, he would turn his head slightly to the right to change his peripheral vision to compensate for the "blurry" vision in his right eye.  At the time of the accident, defendant had been driving in the center lane of the four-lane highway at approximately 30 to 35 miles per hour.  Defendant testified that his vision had been unobstructed and that he had not seen the decedent prior to the collision. 

Following the presentation of evidence and prior to closing arguments, the trial court held a jury instruction conference.  Plaintiff's counsel submitted, in relevant part, plaintiff's instruction No. 31, a modified version of Illinois Pattern Jury Instructions, Civil, No. 70.03 (3d ed. 1995) (hereinafter IPI Civil 3d), which, in turn, is based upon section 11--1003(a) of the Vehicle Code (Code) (625 ILCS 5/11--1003(a) (West 1996)), regarding the duty of a pedestrian while crossing a roadway other than within a marked crosswalk.  Plaintiff's instruction No. 31 provided:

"There was in force in the State of Illinois at the time of the occurrence in question a statute which provided that:

Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-

of-way of [
sic
] all vehicles upon the roadway.

That right-of-way is not absolute, and depends upon the facts and circumstances of each case.

Notwithstanding the foregoing provisions of this section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary.

If you decide that [the decedent] or [defendant] violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether and to what extent, if any, [the decedent] or [defendant] were negligent before and at the time of the occurrence."  

The trial court approved this instruction over defendant's objection.  Defense counsel then submitted defendant's instruction No. 15, a modified version of IPI Civil 3d No. 70.03, which, in turn, again is based upon section 11--1003(a) of the Code (625 ILCS 5/11--1003(a) (West 1996)), regarding the duty of a pedestrian, when crossing a roadway, to yield the right of way to all vehicles.
(footnote: 2)  The court refused defendant's instruction No. 15 because it was "covered [in plaintiff's instruction No.] 31."  

Defense counsel then submitted defendant's instruction No. 19, a modified version of IPI Civil 3d No. 60.01, based upon section 11--1007(d) of the Code (625 ILCS 5/11--1007(d) (West 1996)), regarding the duty of a pedestrian while walking on a highway.  Defendant's instruction No. 19 provided: 

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

Any pedestrian upon a roadway shall yield the right-of-way to all vehicles upon the roadway.

If you decide that [the decedent] violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether and to what extent, if any, [the decedent] was negligent before and at the time of the occurrence."  

The trial court approved defendant's instruction No. 19 over plaintiff's objection, even though it agreed with plaintiff that this particular instruction was "duplicated." 

Following its deliberations, the jury entered a verdict in favor of defendant and against plaintiff.  The trial court subsequently denied plaintiff's post-trial motion requesting the court to set aside the jury verdict and grant either a judgment 
n.o.v.
 or, in the alternative, a new trial.  This appeal followed.

Plaintiff first contends that the trial court deprived her of the assurance of a jury that was free from bias or prejudice.  Plaintiff asserts that the court failed to conduct appropriate examinations of the prospective jury members and abused any discretion it was allowed by the "letter of Supreme Court Rule 234." According to plaintiff, the trial court conducted extremely superficial examinations of the prospective jurors and refused to permit counsel for either party to question the prospective jurors in contravention of Supreme Court Rule 234 which mandates that parties shall be included in the 
voir dire 
process.  Defendant argues that plaintiff waived her right to claim error with respect to the trial court's jury selection process by explicitly assenting on the record to the propriety of the trial court's procedure and failing to object to any aspect of the jury selection process, to  proffer any written supplemental questions to be posed to prospective jurors, and to demonstrate that she was prejudiced.

Prior to 1997, Supreme Court Rule 234 (177 Ill. 2d R. 234)), which governs the 
voir dire
 examination of jurors in a civil trial, stated as follows:

"The court shall conduct the 
voir dire
 examination of prospective jurors by putting to them questions it thinks appropriate touching [upon] their qualifications to serve as jurors in the case on trial.  The court may permit 
the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, or 
may
 permit the parties to supplement the examination by such direct inquiry as the court deems proper.  Questions shall not directly or indirectly concern matters of law or instructions.  The court may acquaint prospective jurors with the general duties and responsibilities of jurors."  (Emphasis added.)  134 Ill. 2d R. 234.

Effective May 1, 1997, Rule 234 was amended, retaining the provision that the trial court is responsible for conducting the 
voir dire 
and that the trial court may permit the parties to submit additional questions it thinks are appropriate, and adding that the trial court "
shall 
permit 
the parties to supplement the examination by such direct 
inquiry as the court deems proper for a reasonable period of time depending upon the length of examination by the court, the complexity of the case, and the nature and extent of the damages."  (Emphasis added.)  177 Ill. 2d R. 234.
(footnote: 3)  No committee comments exist providing an explanation regarding the change from the court "may" permit counsel to supplement the 
voir dire
 examination by direct inquiry to the court "shall" permit such direct inquiry.  Therefore, this court must determine whether amended Rule 234 requires the trial court to allow counsel to directly question prospective jurors during a 
voir dire 
examination with supplemental oral questions.

The rules of statutory construction apply to supreme court rules.  See 134 Ill. 2d R. 2.  A primary rule of statutory construction requires a court to ascertain the drafters' intent; in so doing, our statutory construction begins with the plain meaning of the language employed and ends when the meaning of that language is clear.  See 
Alpine Bank v. Yancy
, 274 Ill. App. 3d 766, 768, 654 N.E.2d 1088 (1995).  When the language of a supreme court rule is clear and, thus, unambiguous, this court will not read into the rule exceptions, limitations, or other conditions.  See 
Anderson v. Financial Matters, Inc.
, 285 Ill. App. 3d 123, 135, 672 N.E.2d 1261 (1996).  Construction of a statute or, in the present case, a supreme court rule is a question of law subject to this court's 
de novo
 review.  See 
In re Marriage of Zuberbier
, 309 Ill. App. 3d 386, 388, 722 N.E.2d 323 (1999).

Here, the language of Rule 234 is clear and unambiguous: the court "shall" permit each counsel to supplement the 
voir dire
 examination by direct inquiry as the court deems proper for a reasonable period of time. "Generally, the use of the word 'shall' is regarded as indicative of a mandatory intent." 
People v. Singleton
, 103 Ill. 2d 339, 341-42, 469 N.E.2d 200 (1984), quoting 
Andrews v. Foxworthy
, 71 Ill. 2d 13, 21, 373 N.E.2d 1332 (1978).  However, the verb "shall" may also be interpreted to mean "must" or "may" depending upon the context and the drafters' intent.  See 
Village of Park Forest v. Fagan
, 64 Ill. 2d 264, 268, 356 N.E.2d 59 (1976).

In view of the manner and context in which Rule 234 was amended, it is evident to us that the Supreme Court intended a mandatory construction of "shall."  Prior to amendment, the rule specified that the trial court "may" permit counsel to ask questions through the court.  Accordingly, the court had the discretion to permit counsel to ask oral questions.  See 
Anderson
, 285 Ill. App. 3d at 135 (noting that "[a]s a rule of statutory construction, the word 'may' is permissive or discretional as opposed to mandatory").  T
he drafters, in amending the rule, changed the permissive verb "may" to "shall," and the Supreme Court adopted the rule.  Accordingly, under the rule as amended, the trial court must now allow counsel a reasonable opportunity to supplement the trial court's own direct inquiry by counsels' own direct oral inquiry.  In the instant case, therefore, we find that the trial court erred in not permitting plaintiff's counsel an opportunity to supplement the court's 
voir dire
 examination with his own direct oral questions.

We are aware that our colleagues in the Second District, in the case of 
People v. Allen
, No. 2--98--0796 (June 7, 2000), construed amended Rule 431 (177 Ill. 2d R. 431), which incorporates amended Rule 234, and acknowledged the general rule concerning the verb "shall" but nonetheless interpreted "shall" to be directory.  
Allen
, No. 2--98--0796, slip op at 3.  We cannot, however, construe "shall" in the context of amended Rule 234 as other than mandatory. 

We are also aware that the 
Allen
 court found that, even though the trial court had not complied with Rule 431, no prejudicial error occurred in the procedure employed by the trial court despite the fact that the court denied, as here, the parties' counsel a reasonable period of time within which to ask questions directly of the prospective jurors.   
Allen
, No. 2--98--0796, slip op at 3.  We cannot reach the same conclusion in the case at bar.  "[L]imitation of 
voir dire
 questioning may constitute reversible error if it results in denying a party a fair opportunity to properly investigate an important area of potential bias and/or prejudice among prospective jurors."  
People v. Oliver
, 265 Ill. App. 3d 543, 548, 637 N.E.2d 1173 (1994).  In the instant case, plaintiff raises numerous case-specific questions that the trial court failed to ask and argues that t
he trial court failed to conduct 
voir dire
 sufficient enough to identify jurors entertaining a bias against a pedestrian who crosses a street at a place other than an intersection or marked crosswalk and to provide enough information to enable plaintiff to use her peremptory challenges.  We agree.  The trial court merely posed a general question to the jurors regarding whether they or a family member or close friend had been involved in an accident.  A question should not depend upon the prospective juror to volunteer information that does not fall within the question's scope.  See 
Kingston v. Turner
, 115 Ill. 2d 445, 467, 505 N.E.2d 320 (1987).  The trial court here erred in not allowing counsel to participate in the 
voir dire, 
and we cannot conclude with certainty that the trial court's limited 
voir dire
 examination was sufficient enough to ensure an impartial jury and that the verdict would not have changed had plaintiff's counsel participated in the 
voir dire
, as he was entitled to do.  Accordingly, plaintiff is entitled to a new trial.

We reject defendant's argument that the trial court's error was waived by plaintiff's failure to object.  The record shows that plaintiff's counsel expressed his desire to contribute to the 
voir dire
 examination, submitted a detailed list of 
voir dire
 questions to the trial court, and requested a sidebar because he was critical of the process employed by the trial court.  The record also shows that the trial court informed the jury that counsel had already submitted the questions they wanted asked but that the court would ask those which it felt were relevant.  The trial court's procedure was clear, as was its obvious refusal to actually employ any direct, oral supplementation by counsel.  At one point, plaintiff received a panel of jurors that had been tendered by the court, subject to the court's "instructions about the questions being tendered."  In view of these facts, it cannot be said that counsel was not conscientious in bringing the error to the trial court's attention, nor do we believe that the waiver rule was intended to apply to such a situation.

Notwithstanding that we are remanding this case for retrial, we address plaintiff's additional contention that the trial court erred in instructing the jury with both plaintiff's instruction No. 31 and defendant's instruction No. 19 because this issue may recur during the retrial.  Plaintiff asserts that the court erred by instructing the jury with "repetitive" instructions that had unduly emphasized the pedestrian's duty, when crossing a roadway, to yield the right-of-way to all vehicles.  Plaintiff claims defendant's instruction No. 19 failed to describe defendant's duty and, therefore, the "repetitive" instructions the trial court gave to the jury "made the pedestrian's duty appear to be superior to the driver's duty to pedestrians and thereby unduly prejudiced plaintiff."

Defendant initially argues that plaintiff waived any error that defendant's instruction No. 19 failed to describe defendant's duty because she had not objected to that instruction on that basis at the jury instruction conference.  Defendant argues in the alternative that defendant's instruction No. 19 was not peremptory and, therefore, the inclusion of a statement of defendant's duty, which was covered in two other instructions given to the jury,  was not necessary.  Defendant further argues that defendant's instruction No. 19, though similar to plaintiff's instruction No. 31, was based upon a different statute.  Thus, according to defendant, the two instructions were not repetitive, and, even if defendant's instruction No. 19 was repetitive of plaintiff's instruction No. 31, mere repetition of an instruction regarding a party's duty does not constitute reversible error.

To preserve for appellate review an objection to an instruction, a party must state the objection "with specificity so that the trial court can be advised of the specific nature of the objection before it makes a ruling."  
Bresland v. Ideal Roller & Graphics Company
, 150 Ill. App. 3d 445, 453, 501 N.E.2d 830 (1986).  "The failure specifically to set forth the error with sufficient clarity to identify the issue constitutes a waiver of objections to the instruction."  
Ciampi v. Ogden Chrysler Plymouth, Inc.
, 262 Ill. App. 3d 94, 106, 634 N.E.2d 448 (1994).  During the jury instruction conference in the case at bar, counsel for plaintiff objected only to the asserted duplicativeness of the instructions. Accordingly, plaintiff has waived her contention on appeal that defendant's instruction No. 19 was deficient because it had not included a statement of defendant's duty.

Notwithstanding plaintiff's waiver, we would reject plaintiff's argument.  Contrary to the "deficient" peremptory instruction given in 
Ryan v. Monson
, 33 Ill. App. 2d 406, 421-22, 179 N.E.2d 449 (1961), a case relied upon by plaintiff, defendant's instruction No. 19 was not a peremptory instruction informing the jurors that to return a verdict for defendant they had to "believe" that plaintiff violated the statute, that said violation constituted negligence, and that such negligence proximately contributed to cause the accident in question.  Moreover any deficiency in defendant's instruction No. 19 was cured when the trial court gave two other instructions tendered by plaintiff describing a driver's duty.  See 
Revak v. Village of Hanover Park
, 67 Ill. App. 3d 531, 538, 384 N.E.2d 957 (1978) (noting that because instructions are considered as a whole, a deficiency in one may be cured by the giving of another).  Plaintiff's instruction No. 30, which the trial court read to the jury, stated that "[i]t is the duty of every driver of a vehicle using a public highway to exercise ordinary care at all times to avoid placing others in danger and to exercise ordinary care at all times to avoid a collision."  Plaintiff's instruction No. 31, also read by the court to the jury, stated, in pertinent part, that "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary." 

Moreover, plaintiff's instruction No. 31 and defendant's instruction No. 19 were not "repetitive."  Unlike the repetition in the instructions given by the court in 
Ryan
 where the wording of the statute and the wording of the ordinance were virtually identical and pertained to the same circumstances, 
i.e.
, the crossing of a roadway other than in a crosswalk or at an intersection, plaintiff's instruction No. 31 and defendant's instruction No. 19 here contained different wording and pertained to potentially different circumstances of a pedestrian's duty to yield the right-of-way.  Plaintiff's instruction No. 31 informed the jury of a pedestrian's duty, under section 11--1003(a) of the Code (625 ILCS 5/11--1003(a) (West 1996)), to yield the right-of-

way while crossing a roadway not at an intersection or marked crosswalk.   Defendant's instruction No. 19, on the other hand, informed the jury of a pedestrian's duty, under section 11--1007(d) of the Code (625 ILCS 5/11--1007)(d) (West 1996)), to yield the right-of-way while walking upon a roadway.  Moreover, as defendant correctly states, even if defendant's instruction No. 19 was repetitive of plaintiff's instruction No. 31, mere repetition alone of an instruction informing the jury of a party's duty does not constitute reversible error.  See 
Riley v. Johnson
, 98 Ill. App. 3d 688, 695, 424 N.E.2d 842 (1981) (holding that two separate repetitive instructions concerning contributory negligence had not unduly emphasized the point in favor of either litigant); 
Mangan v. F.C. Pilgrim & Co.
, 32 Ill. App. 3d 563, 577, 336 N.E.2d 374 (1975) (holding that the setting out of provisions in an ordinance in both an issues instruction and in an instruction charging specifically that a violation of the ordinance would amount to negligence had not influenced the jury in favor of either litigant).

For the reasons stated, we reverse the orders of the circuit court and remand this cause for retrial on all issues.

Reversed and remanded.

CAHILL, P.J., and WOLFSON, J., concur.

FOOTNOTES
1:
Shortly before trial, the court granted plaintiff's motion to voluntarily dismiss the Survival Act count.

2:
Defendant's proposed instruction No. 15 stated as follows:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

'Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-

of-way to all vehicles upon the roadway.'

If you decide that [the decedent] violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether and to what extent, if any, [the decedent] was negligent before and at the time of the occurrence."   

3:
Amended Rule 234 also provides, as it had prior to amendment, that questions shall not directly or indirectly concern matters of law or instructions and that the court "shall" rather than "may" acquaint prospective jurors with the general duties and responsibilities of jurors.  177 Ill. 2d R. 234.