THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NATHANIEL C. ALLEN, Defendant-Appellant.

Second District    No. 2—98—0796

Opinion filed June 7, 2000.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Catherine M. Fitzsimmons, of Chicago, for appellant.

David R. Akemann, State's Attorney, of St. Charles (Martin P. Moltz and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and Robert J. Morrow, of Early, Collison, Tousey, Regan, Wlodek & Morrow, of Elgin, for the People.

JUSTICE GALASSO delivered the opinion of the court:

On December 10, 1996, the defendant, Nathaniel C. Allen, was indicted for possession of a controlled substance with intent to deliver (720 ILCS 570/401 (West 1996)) and unlawful possession of a controlled substance (720 ILCS 570/402 (West 1996)). The defendant's jury trial on these charges commenced on February 23, 1998. Following trial, the defendant was found guilty of both offenses. After the denial of the defendant's posttrial motion, he was sentenced to a term of 15 years' imprisonment in the Department of Corrections on the possession with intent to deliver conviction. No sentence was imposed on the possession conviction. After his motion to reduce sentence was denied, the defendant filed this timely appeal.

On appeal, the defendant raises the following issues: (1) whether the trial court committed reversible error when it refused to permit the defendants attorneys to directly question prospective jurors, and (2) whether the trial court committed reversible error when it considered improper factors in sentencing the defendant.

The issues raised in this case do not require a detailed statement of facts. By way of background, the defendant was charged with the offenses in this case based upon information received from a police informant. Prior to jury selection in this case, the following colloquy took place:

> "MS. COLTON [one of defendant's attorneys]: Judge, also we have a—I learned through co-counsel about a questioning procedure regarding jury voir dire I would bring to the Court's attention, that although our Criminal Codes for 1997 do not have the updated Rule 234, I did receive through Mr. Morelli a couple of months ago, and also received through the Appellate Defender's

Office, that that has been amended, including language that includes shall permit the parties to supplement the examination by direct inquiry as the Court deems proper for a reasonable period of time.

We are asking this Court respectfully to allow us to have a reasonable period of time to ask questions of the potential jurors in this case. I do have that language for the Court.

THE COURT: That's denied. I don't think in a case of this nature it's at all necessary."

Prior to 1997, Supreme Court Rule 431 (177 Ill. 2d R. 431), which governs the *voir dire* examination of jurors in criminal trials, provided that such examination would be conducted in accordance with Supreme Court Rule 234 (177 Ill. 2d R. 234). Prior to 1997, Rule 234 stated as follows:

"The court shall conduct the *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate touching their qualifications to serve as jurors in the case on trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, *or may permit the parties to supplement the examination by such direct inquiry as the court deems proper*. Questions shall not directly or indirectly concern matters of law or instructions. *The court may acquaint prospective jurors with the general duties and responsibilities of jurors.*" (Emphasis added.) 103 Ill. 2d R. 234.

Effective May 1, 1997, Rule 431 was amended. Under the amendments, Rule 431 incorporated that portion of Rule 234 providing that the trial court was responsible for conducting *voir dire* and that the trial court may permit additional questions to be submitted. However, amended Rule 431 then continues on as follows:

"and *shall permit the parties to supplement the examination by such direct inquiry as the court deems proper for a reasonable period of time depending upon the length of examination by the court, the complexity of the case, and the nature of the charges.*" (Emphasis added.) 177 Ill. 2d R. 431(a).

The amended Rule 431 also provides that the court "shall" rather than "may" acquaint prospective jurors with the general duties and responsibilities of jurors. Finally, the amendments added subsection (b), which provides as follows:

"If requested by the defendant, the court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is

not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror with an opportunity to respond to specific questions concerning the principles set out in this section." 177 Ill. 2d R. 431(b).

The Committee Comments to the amended Rule 431 state as follows:

"The new language is intended to ensure compliance with the requirements of *People v. Zehr*, 103 Ill. 2d 472 (1984). It seeks to end the practice where the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431, Committee Comments.

In *Zehr*, our supreme court ordered a new trial for the defendant where the trial court had refused the defendant's request to question a prospective juror as to the presumption of innocence, the defendant's right not to testify, and the State's burden of proof. The supreme court rejected the State's argument that the jury instructions adequately advised the jury concerning those matters, agreeing with the defendant that the questions were essential to the qualifications of a juror and that instructions at the end of a trial would have little curative effect on a juror who held a prejudice against those basic rights of the defendant. *Zehr*, 103 Ill. 2d at 476-77.

The committee comments provide an explanation as to the addition of section (b). However, contrary to the State's argument in this case, they do not shed light on the changes in section (a), specifically the change from the court "may" permit the attorneys to ask questions of the jury, to the court "shall" permit such questioning. We therefore must determine if under the amendments to Rule 431 the trial court is required to permit attorneys to directly question prospective jurors during *voir dire*. Because the construction of a statute is a question of law, our review is *de novo: People v. Robinson*, 172 Ill. 2d 452, 457 (1996).

In cases to which the preamended Rule 431 was applicable, our supreme court held that, in Illinois, a defendant's right to an impartial jury did not include the right to examine jurors himself. *People v. Buss*, 187 Ill. 2d 144, 176 (1999). Instead, the circuit court had the primary responsibility for examining prospective jurors, and the manner and scope of *voir dire* were deemed to be within its discretion. *Buss*, 187 Ill. 2d at 176. So long as the procedures employed by the circuit court provided a reasonable insurance that prejudice, if any, would be

discovered, the court's exercise of discretion would be upheld. *Buss*, 187 Ill. 2d at 176.

■ The rules for statutory construction apply to supreme court rules. 134 Ill. 2d R. 2. The primary rule of statutory construction is to ascertain and give effect to the true intention of the legislature, and that inquiry appropriately begins with the language of the statute. *People v. Woodard*, 175 Ill. 2d 435, 443 (1997). There is no rule of construction that allows the court to declare that the legislature did not mean what the plain language of the statute imports. *Woodard*, 175 Ill. 2d at 443. Where the language of a statute is clear and unambiguous, it will be given effect without resort to other aids for construction. *Woodard*, 175 Ill. 2d at 443.

■ An amendment is to be construed together with the original act to which it relates. *Woodard*, 175 Ill. 2d at 444. Every amendment to a statute is presumed to have a purpose, and a court must consider the language of an amended statute in light of the need for the amendment and the purpose it serves. *Woodard*, 175 Ill. 2d at 444. A judicial interpretation of a statute is considered part of the statute itself until the legislature amends it contrary to interpretation. *Woodard*, 175 Ill. 2d at 444.

■ The word "shall" in a supreme court rule is not always construed as mandatory but, in fact, "shall" may be defined as the directory "may" depending on the context and the intent of the drafters. See *Village of Park Forest v. Fagan*, 64 Ill. 2d 264, 268 (1976). Where the violation of the rule would cause injury to the public interest or private rights, it is mandatory, not directory. *Fagan*, 64 Ill. 2d at 268. In *Fagan*, the reviewing court construed Supreme Court Rule 504 (166 Ill. 2d R. 504 (formerly Ill. Rev. Stat. 1975, ch. 110A, par. 504)), which provided that, for traffic cases, the date set by the arresting officer for the defendant's court appearance " 'shall be not less than 10 days but within 45 days *** *whenever practicable*.' (Emphasis added.) [Citation.]" *Fagan*, 64 Ill. 2d at 267. The *Fagan* court concluded that the "whenever practicable" language clearly indicated that the 45-day period was not meant to be absolute.

■ Similarly, in this case, there is no public interest or private right that would be injured if attorneys were not permitted to ask questions directly of prospective jurors. The purpose of *voir dire* is to assure the selection of an impartial jury. *People v. Dow*, 240 Ill. App. 3d 392, 396 (1992). Early on, the elimination of questioning by the parties themselves was perceived to be the solution to the problems besetting the jury selection process. Our supreme court recognized that reasonable limitations on *voir dire* examinations do not operate to deprive a litigant of his right to a jury trial. *People v. Lobb*, 17 Ill.

2d 287, 300 (1959). The *Lobb* court quoted Judge Learned Hand's succinct remarks on the conduct of *voir dire* of jurors as follows:

> " '[W]hile it is the custom at common law to allow the parties to cross-examine, there is nothing in this essential to securing a panel free from bias. The length and particularity of the examination of jurors had become a scandal, and required some effective control. So long as the power is exercised with reasonable regard for the rights of the accused, it fulfills the requirements of the law.' "
> *Lobb*, 17 Ill. 2d at 300-01, quoting *Falter v. United States*, 23 F.2d 420, 426 (2d Cir. 1928).

Therefore, we conclude that the portion of Rule 431 providing that the court "shall" permit the parties to ask questions directly of prospective jurors is directory in nature. However, that does not end our inquiry.

■ The fact that the supreme court saw fit to replace "may" with "shall" indicates that the supreme court intended to effect a change in how a trial court exercises its discretion in ruling on attorneys' requests to directly question jurors. Prior to the 1997 amendment, the rule merely authorized direct inquiry of jurors by attorneys; the trial court's discretion was unfettered in determining whether it would permit such questioning. Under the amended Rule 431, however, the trial court is to exercise its discretion in favor of permitting direct inquiry of jurors by attorneys, subject to the factors set forth in the rule.

Therefore, we conclude that Rule 431 does not create an absolute right of attorneys in every case to ask questions directly of prospective jurors. It does, however, require that a trial court exercise its discretion in favor of allowing an attorney's direct questioning of prospective jurors in accordance with the factors listed in Rule 431.

In this case, the trial court did not comply with Rule 431. When asked by the defense counsel for a reasonable period of time within which to ask questions directly of the prospective jurors, the trial court merely responded that it did not feel that it was necessary in a case of this nature. The trial court's rather abbreviated comment gave no indication that it had, in fact, considered the complexity of the case or the nature of the charges in determining to deny the defense attorneys the right to question the prospective jurors directly. Nor did the trial court question the defense attorneys as to potential questions or areas of questioning they would pursue in questioning the jury. Finally, at the time the trial court denied the attorneys the right to question the jurors directly, it had not yet commenced its own questioning and had not indicated to the attorneys that its questioning would be so lengthy or so thorough as to preclude their questioning of the prospective jurors.

We conclude that, under the facts of this case, the trial court abused its discretion when it failed to exercise that discretion in conformity with the rule. The question then remains whether the trial court's abuse of discretion requires that the defendant receive a new trial.

To successfully challenge the adequacy of *voir dire*, it is not necessary for the defendant to show that the jury was, in fact, prejudiced. *People v. Strain*, 306 Ill. App. 3d 328, 335 (1999), *appeal granted*, 185 Ill. 2d 660 (1999). Instead, the standard for determining whether the trial court abused its discretion is whether the means employed to test juror impartiality have " 'created a reasonable assurance that prejudice would be discovered if present.' [Citation.]" *Strain*, 306 Ill. App. 3d at 335. Trial courts must use discretion so they do not " 'block the reasonable exploration of germane factors that might expose a basis for challenge, whether for cause or peremptory.' [Citation.]" *Strain*, 306 Ill. App. 3d at 335. The examination must adequately " 'call to the attention of the veniremen those important matters that might lead them to recognize or to display their disqualifying attributes.' [Citation.]" *Strain*, 306 Ill. App. 3d at 335.

On appeal, the defendant has not raised any specific question or area of questioning that, had the trial court allowed the defense attorneys to question the prospective jurors, would have revealed any bias or prejudice on the part of those jurors. Nonetheless, we have reviewed the *voir dire* proceedings in this case. The trial court informed the prospective jurors as to the offense that the defendant was charged with and explained the burden of proof and the presumption of innocence. The trial court also explained that as jurors they would be required to follow the law as instructed by the trial court. The trial court questioned the prospective jurors as to whether they could fairly judge the testimony of a police officer. As a result of the trial court's questioning, several prospective jurors were excused.

In this case, we believe that the trial court's *voir dire* examination was sufficiently thorough to reveal any potential prejudice or bias on the part of the prospective jurors. While in his posttrial motion the defendant also alleged that the trial court had not asked the prospective jurors any questions regarding race, whether they could return a verdict of guilty or not guilty, whether they could sit in judgment of another person, and about proving each element of the offense beyond a reasonable doubt, he has not raised any issue regarding these particular questions on appeal. In any event, to be constitutionally compelled, it is not enough that a *voir dire* question be helpful; rather, the trial court's failure to ask the question must render the defendant's proceedings fundamentally unfair. *People v. Terrell*, 185 Ill. 2d 467,

485 (1998). Nothing in the record before us suggests that the failure to ask those questions rendered the proceedings in this case fundamentally unfair.

We conclude, therefore, that while the trial court abused its discretion, under the facts of this case its failure to exercise its discretion to determine whether to permit the attorneys to make direct inquiry of the prospective jurors was not prejudicial error and did not render the proceedings in this case fundamentally unfair. Accordingly, the defendant is not entitled to a new trial on that ground.

Therefore, we affirm the defendant's conviction, and, for reasons discussed in the nonpublished portion of the opinion, we vacate his sentence and remand for a new sentencing hearing.

Affirmed in part and vacated in part; cause remanded with directions.

BOWMAN, P.J., and McLAREN, J., concur.