(No. 106714.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DANIEL GARSTECKI, Appellant.

*Opinion filed September 24, 2009.*

Ted Hammel, Frank Andreano, Brett Geiger and Sarah M. Vahey, of Brumund, Jacobs, Hammel, Davidson & Andreano, LLC, of Joliet, for appellant.

Lisa Madigan, Attorney General, of Springfield, and James W. Glasgow, State's Attorney, of Joliet (Michael A. Scodro, Solicitor General, and Michael M. Glick and Sheri L. Wong, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Following a jury trial in the circuit court of Will County, defendant, Daniel Garstecki, was convicted of driving under the influence of alcohol (625 ILCS 5/11—501(a)(2) (West 2008)) and sentenced to 12 months' conditional discharge. The Appellate Court, Third District, affirmed. 382 Ill. App. 3d 802. Defendant appeals, arguing that the trial court erred in denying his attorney's request to pose supplemental questions directly to the entire venire during *voir dire*. We affirm.

### BACKGROUND

On October 19, 2006, at approximately 1:30 a.m., Officer Vince Vitacco of the Lockport police department stopped defendant's vehicle when he observed the vehicle swerving between lanes. Officer Joe Dziatkiewicz assisted Vitacco with the stop. Vitacco noticed an odor of alcohol emanating from the vehicle and also observed that defendant's eyes were bloodshot and glassy. Defendant admitted that he had been drinking beer, and Vitacco

asked him to perform several field sobriety tests. Vitacco administered the Horizontal Gaze Nystagmus, "walk-and-turn," and "one-leg-stand" tests. He also asked defendant to recite the alphabet from B to Z, without singing. Based on the results of these tests, Vitacco and Dziatkiewicz believed that defendant was intoxicated. The officers arrested defendant and asked him to submit to chemical testing to determine his blood-alcohol content. Defendant refused. Defendant was charged with driving under the influence of alcohol, and his driver's license was summarily suspended.

Defendant's attorney filed a motion *in limine*, requesting that he be allowed to question the jury venire directly for a reasonable amount of time. Defendant argued that, pursuant to the 1997 amendments to Supreme Court Rule 431 (177 Ill. 2d R. 431), trial courts must allow attorneys to participate in *voir dire*. Defendant noted that the First and Second Districts had split over whether attorney participation in *voir dire* is mandatory, and urged the court to follow the First District's view that it is. According to defendant's motion, attorneys are usually more familiar with a case than the trial court and are thus in a better position to probe areas of potential prejudice. Defendant also contended that jurors are likely to be more candid when responding to an attorney than to a judge.

At the hearing on the motion, the trial court asked defense counsel what questions he wanted to pose to the venire. Defense counsel stated that he wished to ask whether each prospective juror: (1) had strong personal feelings about the consumption of alcohol and the operation of a motor vehicle; and (2) would tend to give a policeman's testimony the benefit of the doubt over that of a regular citizen. The court explained that these were areas that it was planning to cover in its own *voir dire*. The court stated that it would determine whether any of

the prospective jurors had religious or moral objections to the use of alcohol and whether that belief would affect his or her ability to be fair and impartial. Further, the court would determine whether any of the prospective jurors had friends or relatives in law enforcement and whether this would affect his or her ability to be fair. The court asked defense counsel if this case involved either a blood draw or complicated legal issues. Defense counsel answered "no," and further agreed with the court that the case did not involve complex issues or scientific or factual matters beyond the ken of the average juror.

The court denied the motion, but said that defense counsel could submit written questions for the court to ask the jury. The court further offered that it planned to ask the prospective jurors whether they had donated money to any group that advocates changes in the DUI laws. Defendant submitted two written questions for the trial court to ask: (1) whether any prospective juror had any personal or moral beliefs about the consumption of alcohol; and (2) whether any prospective juror had donated to or participated in any group that advocates changes in DUI laws.

During *voir dire*, the trial court asked the prospective jurors about relationships with persons in law enforcement and whether this would affect their ability to be fair and impartial. The court also inquired about any religious, personal, or moral beliefs that any prospective juror had about the consumption of alcohol and also whether any prospective juror had given money to or participated in any groups that seek to change or strengthen DUI laws. If a prospective juror answered any of these questions in the affirmative, the trial court further queried him or her about the extent and nature of the relationship or belief and whether it would affect

the prospective juror's ability to give defendant a fair and impartial trial.

Following the court's questioning, it again denied defense counsel's request to question the entire venire, but ruled that prospective jurors who answered the trial court's questions in such a way as to indicate a potential for bias could be questioned further. The trial court identified one prospective juror that it would question further. The State selected no additional jurors for further questioning, and defense counsel identified seven. The eight prospective jurors who were identified for further questioning were then taken to a back hallway of the courthouse, where the trial court questioned them further. Following the trial court's questioning, the attorneys were allowed to question these eight prospective jurors.

The jury trial consisted solely of the testimony of Officers Vitacco and Dziatkiewicz. Defendant did not present a defense. The jury found defendant guilty of driving under the influence of alcohol, and the court sentenced him to 12 months' conditional discharge. Defendant moved for a new trial, arguing that the court had erred in denying his attorney's request to directly question the entire venire. In denying the motion, the court explained that it had allowed defense counsel to further question individual venire members after the court's initial questioning.

Defendant appealed, arguing that (1) the trial court erred in denying his request to directly question the entire venire; and (2) the evidence was insufficient to support his conviction. The appellate court agreed with defendant's first contention but not his second. The court, however, did not find that the trial court's error warranted reversal.

Relevant to the *voir dire* issue, the appellate court began with Rule 431, which governs *voir dire* in criminal

cases. The pertinent sentence states that the trial court "shall permit the parties to supplement the examination by such direct inquiry as the court deems proper for a reasonable period of time depending upon the length of examination by the court, the complexity of the case, and the nature of the charges." 177 Ill. 2d R. 431. The appellate court noted that a conflict has arisen in the appellate court over how this language should be interpreted. In *People v. Allen*, 313 Ill. App. 3d 842 (2000), the Second District held that the above language was directory and that it did not mandate attorney participation in *voir dire* in every case. The *Allen* court held that the rule requires the trial court to exercise its discretion in favor of allowing direct questioning of prospective jurors, subject to the factors set forth in the rule. *Allen*, 313 Ill. App. 3d at 847. In *Grossman v. Gebarowski*, 315 Ill. App. 3d 213 (2000), the First District interpreted Supreme Court Rule 234 (177 Ill. 2d R. 234), the civil counterpart to Rule 431, which contains virtually identical language.[1] The First District rejected the Second District's directory reading and held that the provision is mandatory. The First District noted that the rule previously had used the term "may," but that this court had amended the rule to replace "may" with "shall." The First District concluded that this change was intended to make the rule mandatory. *Grossman*, 315 Ill. App. 3d at 221.

In this case, the Third District agreed with the First District's interpretation and construed Rule 431 to be mandatory with respect to direct attorney questioning of the venire. 382 Ill. App. 3d at 809. The court held that Rule 431 gives attorneys "an absolute right to ask questions directly of prospective jurors limited only by reasonable restrictions of scope and time." 382 Ill. App. 3d at

---

[1]Rule 234 substitutes "the nature and extent of the damages" for "the nature of the charges." See 177 Ill. 2d R. 234.

809. The court reasoned that any other interpretation would render the term "shall" meaningless and superfluous. 382 Ill. App. 3d at 810. Although it acknowledged that the rule contains the phrase "as the court deems proper," the court determined that this language did not give the court discretion to reject counsel's request to supplement the court's direct inquiry, but rather merely granted it the discretion to curtail the scope and duration of counsel's inquiry. 382 Ill. App. 3d at 810. Thus, the court determined that the trial court had erred in denying defense counsel's request to directly question the venire.

Nevertheless, the court determined that reversal was not warranted. Following *Grossman*, the court held that the relevant inquiry in determining whether reversal is required for a Rule 431 or Rule 234 violation is whether the violation was sufficiently prejudicial to warrant a new trial. 382 Ill. App. 3d at 811-12. In *Grossman*, the court held that it was. Here, the appellate court held that it was not. The court noted that the trial court itself asked the questions that defense counsel wished to ask and, when those questions revealed any potential for bias, the trial court questioned those prospective jurors further.[2] Thus, the court concluded that the error was not so prejudicial as to warrant a new trial. 382 Ill. App. 3d at 812.

---

[2]Although it mentioned it in the statement of facts, the appellate court never acknowledged in the analytical portion of its opinion that the trial court did allow supplemental attorney questioning of those prospective jurors whose answers to the trial court's *voir dire* indicated a potential for bias. Indeed, at one point in its analysis, the appellate court even stated that "the circuit court failed to comply with Rule 431 when it *refused to permit defendant to directly question prospective jurors*." (Emphasis added.) 382 Ill. App. 3d at 810. This is not an accurate description of what the trial court did.

We allowed defendant's petition for leave to appeal. 210 Ill. 2d R. 315.

## ANALYSIS

On appeal, defendant argues that, under the plain language of Rule 431, the trial court had no discretion to deny his request to directly question the entire venire. Defendant further argues that harmless-error review is not appropriate for violations of Rule 431 and that, even if it is, the burden of proof is on the State to demonstrate that the error is harmless. These are purely issues of law, and thus our review proceeds *de novo*. *People v. Marker*, 233 Ill. 2d 158, 162 (2009).

When interpreting supreme court rules, this court is guided by the same principles applicable to the construction of statutes. *In re Estate of Rennick*, 181 Ill. 2d 395, 404 (1998). Thus, our primary goal is to ascertain and give effect to the drafters' intention. *In re Storment*, 203 Ill. 2d 378, 390 (2002). The most reliable indicator of intent is the language used, which must be given its plain and ordinary meaning. *Marker*, 233 Ill. 2d at 165.

### Rule 431

*Voir dire* in criminal cases is governed by Supreme Court Rule 431. Before being amended in 1997, Rule 431 provided that, "In criminal cases, the *voir dire* examination of jurors shall be conducted in accordance with Rule 234." 134 Ill. 2d R. 431. At that time, Rule 234 provided as follows:

"The court shall conduct the *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate touching their qualifications to serve as jurors in the case on trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, *or may permit the parties to supplement the examination by such direct inquiry as the court deems proper*. Questions shall not directly or indirectly concern matters of law or instructions. The court

may acquaint prospective jurors with the general duties and responsibilities of jurors." (Emphasis added.) 134 Ill. 2d R. 234.

When this version of the rule was in effect, this court had held that the primary responsibility for *voir dire* examination was with the trial court and that the manner and scope of *voir dire* was within the court's discretion. *People v. Williams*, 164 Ill. 2d 1, 16 (1994).

In 1997, this court amended Supreme Court Rules 234 and 431. Rule 431 now provides, in relevant part, as follows:

"The court shall conduct *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate, touching upon their qualifications to serve as jurors in the case at trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate *and shall permit the parties to supplement the examination by such direct inquiry as the court deems proper for a reasonable period of time depending upon the length of examination by the court, the complexity of the case, and the nature of the charges.* Questions shall not directly or indirectly concern matters of law or instructions. The court shall acquaint prospective jurors with the general duties and responsibilities of jurors." (Emphasis added.) 177 Ill. 2d R. 431(a).

## Allen

The State contends that this court should adopt the analysis in *Allen*, which was the first appellate court decision to consider the meaning of the new language. In that case, the defendant was charged with possession of a controlled substance and possession of a controlled substance with the intent to deliver. Before trial, the defendant's attorney informed the court of the change in the rule from "may" to "shall" and requested that he be allowed a reasonable period of time to question the venire. The court denied the request, stating that it did not think it was necessary in a case of that nature. *Allen*, 313 Ill. App. 3d at 843-44.

On appeal, the court considered the meaning of the change in the rule from "may" to "shall." The court noted that, under the previous version of the rule, whether to allow attorney participation in *voir dire* was left entirely within the court's discretion. *Allen*, 313 Ill. App. 3d at 845. The court then explained that "shall" can have either a mandatory or a directory meaning. In *Village of Park Forest v. Fagan*, 64 Ill. 2d 264, 267-68 (1976), this court held that "shall" had a directory reading when it was modified by the phrase "whenever practicable." Thus, in Supreme Court Rule 504, the phrase " 'shall not be less than 10 days but within 45 days *** whenever practicable' " showed that the 45-day period was not meant to be absolute.[3] (Emphasis omitted.) See *Fagan*, 64 Ill. 2d at 267, quoting Ill. Rev. Stat. 1975, ch. 110A, par. 504. The *Fagan* court also explained that, where the violation of the rule would cause injury to the public interest or private rights, it is mandatory rather than directory. *Fagan*, 64 Ill. 2d at 268. The *Allen* court did not believe that a public interest or private right would be injured if attorneys were not permitted to directly question the venire because the purpose of *voir dire* is to assure the selection of an impartial jury and this can be accomplished through *voir dire* by the trial court. *Allen*, 313 Ill. App. 3d at 846-47.

Nevertheless, the court acknowledged that the 1997 amendment to Rule 431 was not an empty act and that the change from "may" to "shall" must have had some meaning. The *Allen* court explained that, under the previous version of the rule, the court's discretion was

---

[3]By emphasizing this portion of *Fagan*, it appears that the *Allen* court was drawing a parallel between the "whenever practicable" language in Rule 504 and the "as the court deems proper" language in Rule 431. See *Allen*, 313 Ill. App. 3d at 846. Nevertheless, the court never did make this point directly.

unfettered in determining whether it would allow direct questioning by the attorneys. Under the new version, while the trial court is not required to allow direct questioning by attorneys in every case, "the trial court is to exercise its discretion in favor of permitting direct inquiry of jurors by attorneys, subject to the factors set forth in the rule." *Allen*, 313 Ill. App. 3d at 847.

The Second District determined that the trial court had erred by denying the request in the case before it, because there was no indication that the court had given any consideration to the factors set forth in the rule. Moreover, the trial court simply stated that attorney questioning was not necessary, and did not ask the attorney what lines of inquiry he planned to pursue. *Allen*, 313 Ill. App. 3d at 846-47. Although the *Allen* court found an abuse of discretion by the trial court, it determined that reversal was not required. The court determined that the trial court's *voir dire* was sufficient to uncover any biases or prejudices of the prospective jurors, and thus the proceeding had not been fundamentally unfair. *Allen*, 313 Ill. App. 3d at 848-49. A noted authority on Illinois trial practice, after reviewing the Second District's decision in *Allen* and the First District's later interpretation in *Grossman*, concluded that the *Allen* rule is "reasonable and serves well the interests of both parties and justice" and that "[i]t should, ultimately, receive the approval of the Supreme Court." See 1 R. Hunter, Trial Handbook for Illinois Lawyers, Criminal §22:3, at 518 (8th ed. 2002).

## Grossman

Defendant argues that this court should follow *Grossman*, in which the First District interpreted Rule 431's civil counterpart, Rule 234, which contains identical language. *Grossman* was a wrongful-death case in which the decedent, a pedestrian suffering from cerebral palsy,

was struck and killed by an automobile while he was crossing the street. Plaintiff, the special administrator of the decedent's estate, requested to participate in *voir dire*. The trial court explained that the parties could proffer written questions, but that the trial court would ask only those questions that it considered relevant. The trial court further stated that it alone would do the questioning. When defense counsel questioned this procedure and asked to directly question the jurors, the trial court responded that it knew that the supreme court rules said that attorneys shall participate, but explained that it allowed attorney participation through written questions. Plaintiff, for the record, joined in defense counsel's request for direct questioning by the attorneys. *Grossman*, 315 Ill. App. 3d at 215-16.

The jury returned a verdict for defendant, and plaintiff appealed. Plaintiff argued, *inter alia*, that the trial court erred when it ignored the plain language of Rule 234 and refused to allow the parties to participate in *voir dire*. The appellate court held that the rule was clear and unambiguous in that it used the word "shall." The court noted that the term "shall" can sometimes be interpreted to mean "must" or "may," but such an interpretation would not be proper here, given that the rule was amended to change "may" to "shall." *Grossman*, 315 Ill. App. 3d at 221. The court stated that it was aware that the Second District had interpreted "shall" to be directory, but stated that it could not construe it as other than mandatory. *Grossman*, 315 Ill. App. 3d at 221. The court found that reversible error had occurred, because the trial court's *voir dire* was superficial and not sufficient to ensure that an unbiased jury was seated. *Grossman*, 315 Ill. App. 3d at 221-22. As we noted above, the Third District in the present case reviewed both *Allen* and *Grossman* and determined that *Grossman* was more persuasive and should be followed.

*Robinson*

Both *Allen* and *Grossman* were decided before this court's decision in *People v. Robinson*, 217 Ill. 2d 43 (2005), in which this court explained the difference between the mandatory-permissive and mandatory-directory dichotomies, and the courts in those cases blurred the distinction between the two.[4] The appellate court in the present case simply analyzed the question under *Allen* and *Grossman* and did not mention *Robinson*. As this court explained in *Robinson*, whether a statute is mandatory as opposed to permissive is a separate question from whether a statute is mandatory as opposed to directory. The first inquiry—whether a statute is mandatory or permissive—concerns whether a government official is required to perform a specific duty or whether the official has the discretion whether to perform it. "[T]he mandatory-permissive dichotomy concerns whether the language of a statute has the force of a command that imposes an obligation, or is merely a grant of permission or a suggestion, which therefore imposes no obligation." *Robinson*, 217 Ill. 2d at 52.

The second inquiry—whether a statute is mandatory or directory—concerns the consequences of failing to fulfill the particular obligation. *Robinson*, 217 Ill. 2d at 52. If the statute is mandatory as opposed to directory, a failure to comply with the particular procedural step will " 'have the effect of invalidating the governmental action to which the procedural requirement relates.' " *Robinson*, 217 Ill. 2d at 51-52, quoting *Morris v. County of Marin*, 18 Cal. 3d 901, 908, 559 P.2d 606, 610-11, 136 Cal. Rptr. 251, 255-56 (1977). Thus, a particular statu-

---

[4]This is perfectly understandable. As this court explained in *Robinson*, our case law helped create this problem by treating the mandatory-permissive dichotomy as interchangeable with the mandatory-directory dichotomy. *Robinson*, 217 Ill. 2d at 53.

tory obligation could be both mandatory as opposed to permissive and directory as opposed to mandatory. The use of the word "shall" is often determinative of whether a statute is mandatory as opposed to permissive, but "shall" has never been considered determinative in considering whether a statute is mandatory or directory. *Robinson*, 217 Ill. 2d at 53-54.

With the *Robinson* principles in mind, we now turn to an analysis of Rule 431. As the appellate court in this case, as well as the *Allen* and *Grossman* courts, held, the change from "may" to "shall" must have had some significance. That significance was to change the rule from a permissive one to a mandatory one. Under the previous version of the rule, which stated that the court "may" allow attorney participation as the court deems proper, the trial court had complete discretion whether to allow attorneys to participate in *voir dire*. A trial court could have had a blanket policy of not allowing attorneys to participate, and this would have been a virtually unchallengeable exercise of discretion.

With "shall" replacing "may," the rule now imposes a mandatory obligation upon trial courts. But we must still consider the nature of this mandatory obligation. Defendant believes that what the rule mandates is direct attorney questioning of the entire venire in every case. The appellate court in this case and in *Grossman* reached the same conclusion. The text of the rule, however, simply does not support such an interpretation.

Again, the relevant portion of the rule states that the trial court "shall permit the parties to supplement the examination by *such direct inquiry as the court deems proper* for a reasonable period of time depending upon the length of examination by the court, the complexity of the case, and the nature of the charges." (Emphasis added.) 177 Ill. 2d R. 431. When used in this sense, "such" is synonymous with "whatever." See Webster's

New World Dictionary 1422 (2d Coll. ed. 1986). Thus, what the rule clearly mandates is that the trial court consider: (1) the length of examination by the court; (2) the complexity of the case; and (3) the nature of the charges; and then determine, based on those factors, whatever direct questioning by the attorneys would be appropriate. Trial courts may no longer simply dispense with attorney questioning whenever they want. We agree with the *Allen* court's observation that the "the trial court is to exercise its discretion in favor of permitting direct inquiry of jurors by attorneys." *Allen*, 313 Ill. App. 3d at 847. We are not prepared to say, however, that it is impossible to conceive of a case in which the court could determine, based on the nature of the charge, the complexity of the case, and the length of the court's examination, that no attorney questioning would be necessary.

Regardless, we are not faced with that situation here. *Allen* and *Grossman* were cases in which the trial court did not comply with the rule. In those cases, the courts did not allow any questioning, and there was no indication that the courts considered the factors set forth in the rule. Here, the record shows that the trial court unquestionably complied with the rule. The court inquired as to what questions the defendant's attorney wanted to ask, and then explained that these were areas that the court was already going to cover in its own questioning. The court further asked if the case was going to involve either a blood draw or complex legal issues, and the defendant's attorney agreed that the case would involve no complex factual or legal issues. Indeed, the trial was an exceedingly simple one, involving solely the testimony of two officers about a traffic stop and DUI arrest that did not include any breath or blood testing. Following its own *voir dire*, the court then allowed defendant's attorney to pick out any prospective jurors

that he wished to question further. This allowed defendant's attorney to ask follow-up questions to any jurors whose answers to the trial court's questions indicated a potential for bias. Thus, the court did exactly what the rule mandates: it considered the appropriate factors and allowed whatever supplemental questioning it deemed appropriate for the case. There is simply no support in the text of the rule for defendant's contention that the attorney must be allowed to directly question the entire venire in every case.

The appellate court believed that interpreting the rule in this manner would render the term "shall" superfluous and meaningless. This is simply a misreading of what the term "shall" refers to. The rule does not state that the court shall allow the attorneys to question the entire venire in every case. Rather, it provides that the court shall allow whatever attorney questioning it deems proper after considering the factors set forth in the rule.

Because the trial court complied with the rule's mandatory obligation, we are not presented with the question of whether the rule is mandatory or directory. As we explained above, that issue must be resolved only when a trial court fails to comply with a statutory directive. Similarly, because we find no error, we have no occasion to consider whether a violation of Rule 431 can be harmless error. We thus affirm the judgment of the appellate court, but for reasons other than those set forth by that court.

*Affirmed.*