FIRST DIVISION
March 31, 2010

No. 1-08-1370

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 12782 |
| | ) | |
| JAMES WHEELER, | ) | The Honorable |
| | ) | Lawrence W. Terrell, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GARCIA delivered the opinion of the court.

The defendant, James Wheeler, was convicted of residential burglary by a jury and sentenced to 15 years' imprisonment. He seeks automatic reversal under the plain error doctrine based on the trial judge's alleged violation of Illinois Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007) for failing to establish that each prospective juror understood and agreed with the four principles enunciated by our supreme court in People v. Zehr, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984). The State counters the trial judge complied with Rule 431(b) and, in any event, the alleged error is not a second-prong plain error, triggering automatic reversal.

We find the trial judge violated Rule 431(b), but the violation did not challenge the integrity of the trial process such that automatic reversal is triggered. We follow the line of decisions since People v. Glasper, 234 Ill. 2d 173, 917 N.E.2d 401 (2009), holding a violation of

Rule 431(b) is not a second-prong plain error. Because the defendant makes no claim that the Rule 431(b) error is a first-prong plain error, the claimed error is forfeited. We affirm.

BACKGROUND

In the early morning of January 15, 2006, Daryl James Mortensen returned to his home in a western suburb to find some of his belongings missing and one of his windows open. Mortensen called the village police, who dusted his apartment for fingerprints. The police obtained one set of prints from a vase that had been in Mortensen's sole custody for at least seven years. Mortensen had used the vase to store coins but the vase was empty when he returned home.

On May 7, 2006, the defendant was arrested outside his Chicago apartment. Edward Rottman, a fingerprint examiner for the Illinois State Police, found that two of the fingerprints lifted from the vase matched the defendant's. After a trial in April 2008, a jury found the defendant guilty of residential burglary.

In the course of jury selection, Judge Lawrence W. Terrell admonished the venire of the four principles set forth in Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007). The judge informed the venire:

> "Every defendant in our country is presumed to be innocent
> of the charges. This presumption remains with the defendant
> throughout every stage of the trial, even through your deliberations
> on your verdict.
> ***

2

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case.

A defendant is not required to prove his or her innocence, nor is a defendant required to present any evidence at all. Any defendant may simply rely on the presumption of innocence.

Moreover, every defendant has a Constitutional right not to testify, and the jury cannot draw any inference of guilt if the defendant fails to testify."

After announcing these principles, the judge discussed the division of labor between judge and jury, the requirement that the jury arrive at a decision only after hearing all evidence and arguments, and the prohibition against allowing one's prejudices or sympathies to taint the verdict. He then discussed administrative matters, such as the purpose of objections, the requirement that jurors not discuss the case outside of court, and the procedure for recesses and lunch breaks.

Only after a relatively lengthy discussion of matters unconnected to the Zehr principles he announced earlier, did the trial judge question the venire directly. He asked the first group of prospective jurors: "The principles of law I described earlier, are you in agreement with those principles?" Each eventual juror answered affirmatively. In questioning the second group of prospective jurors, the judge asked whether they agreed with "the presumption of innocence and the burden of proof" in addition to "the principles of law I described earlier." Each eventual juror

answered affirmatively.

The selected jurors found the defendant guilty; he was sentenced to 15 years in prison. This timely appeal followed.

ANALYSIS

Compliance With Rule 431(b)

Underlying his claim of plain error, the defendant contends the trial judge erred by not "strictly [complying] with amended Supreme Court Rule 431(b)." The State responds the trial judge followed Rule 431(b) by noting strict compliance is not required: the rule does not require " 'magic words' or 'catechism.' "

We examine whether the trial judge complied with Rule 431(b), but only to determine whether plain error occurred. We find no aid to our plain error analysis to decide whether the rule requires "strict" or, as the State suggests, substantial compliance. See People v. Garstecki, 234 Ill. 2d 430, 445, 917 N.E.2d 465 (2009) ("Because the trial court complied with the rule's mandatory obligation, we are not presented with the question of whether the rule is mandatory or directory"). Rule 431(b) mandates that each prospective juror be asked about his or her acceptance and understanding of each of the essential principles, now referred to as the Zehr questions. In the course of making such an inquiry, the method employed by the trial judge must afford "each juror an opportunity to respond to specific questions concerning the principles set out in this section." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007. We examine the record to determine whether the clear mandates of the rule were followed. Both sides agree that "[t]he issue of compliance with a supreme court rule is reviewed

4

de novo." People v. Gardner, 347 Ill. App. 3d 578, 583, 808 N.E.2d 10 (2004).

In 1984, our supreme court declared: "[E]ssential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him." Zehr, 103 Ill. 2d at 477.

In 1997, the supreme court amended Rule 431(b) to require the Zehr questions be asked when requested by the defendant by replacing the word "may" with "shall." 177 Ill. 2d R. 431(b). In 2007, the supreme court again amended Rule 431(b) to place "an affirmative sua sponte duty on the trial courts to ask potential jurors in each and every case whether they understand and accept the Zehr principles." People v. Graham, 393 Ill. App. 3d 268, 273, 913 N.E.2d 99 (2009); Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007. The Committee Comments continue to state that the rule "seeks to end the practice where the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431(b), Committee Comments, at lxxix.

Here, the trial judge recited each of the four Zehr principles to the entire venire, followed by a recitation of matters not pertaining to the Zehr principles. After this relatively lengthy recitation, he proceeded to ask the first group of prospective jurors whether they agreed with "[t]he principles of law I described earlier." In addition to this question, the trial judge asked the second group of prospective jurors whether they agreed specifically with "the presumption of innocence and the burden of proof." As the State points out: "Of the 14 jurors selected, 9 jurors

were asked if they agreed with the principles of law discussed earlier. With the other jurors selected, the court asked the jurors if they agreed with the principles of law discussed earlier, and specifically stated the presumption of innocence and the burden of proof."

We find the trial judge's inquiry of the first nine jurors, as to whether they agreed with the "principles" he had addressed earlier, fell short of the inquiry required by Rule 431(b). The question put to this first group of prospective jurors was much like "a general question concerning the juror's willingness to follow the law" that Rule 431(b) sought to prohibit. 177 Ill. 2d R. 431(b), Committee Comments, at lxxix; People v. Arredondo, 394 Ill. App. 3d 944, 953-54, 916 N.E.2d 1263 (2009) (trial judge's general inquiry about the "appropriate verdict form" was general questioning concerning the jurors' willingness to follow the law, which Rule 431(b) sought to prohibit).

To be clear, we do not suggest that the rule requires questioning of each prospective juror, either individually or in a group, regarding the acceptance and understanding of each Zehr principle, although following this method would obviate plain error review on appeal. See People v. Strickland, No. 1-08-1304, slip op. at 24-28 (March 8, 2010) (rejecting claim that the voir dire method employed by the circuit court violated Rule 431(b)).

We do find, however, that the questioning of the prospective jurors about each Zehr principal must be timely connected to an "opportunity to respond to specific questions concerning the

6

No. 1-08-1370

principles." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007. As our supreme court stated in Zehr, "essential to the qualification of jurors in a criminal case" is that they understand and accept each of the Zehr principles. Zehr, 103 Ill. 2d at 477. To ensure that juror qualification is ascertained, we believe informing the prospective jurors of the Zehr principles must precede closely in time with "an opportunity to respond to specific questions concerning the principles." (Emphasis added.) Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

We construe the reference to "specific questions" in Rule 431(b) to mean that the questions must specifically reference the Zehr principles. This may be done by the question itself stating the principle and asking the prospective jurors whether they accept and understand the principle or the specific question regarding their understanding and acceptance may timely follow a recitation of each of the principles. See Strickland, slip op. at 24-28 (where the circuit court employed the latter method).

It is clear, however, that in order to connect the Zehr principles to the opportunity of the venire to express their understanding and acceptance of each of the principles, the recitation of the principles and the questioning of the venire

7

must be connected closely in time.  We find the general question

concerning the prospective jurors' acceptance of "the principles

of law I described earlier" to be inadequate because the trial

judge gave a lengthy recitation of matters outside the scope of

Zehr (15 pages of transcript) before he asked this question.  As

a consequence, the trial judge failed to give the first nine

jurors "an opportunity to respond to specific questions

concerning [each of the Zehr] principles."  Official Reports

Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1,

2007.  Supreme court rules "are not aspirational.  They are not

suggestions.  They have the force of law, and the presumption

must be that they will be obeyed and enforced as written."

Bright v. Dicke, 166 Ill. 2d 204, 210, 652 N.E.2d 275 (1995).

We find that the remaining five jurors were given an

opportunity to respond to specific questions regarding "the

presumption of innocence and the burden of proof," as the State

points out.  However, these eventual jurors were never asked

specific questions concerning the remaining two Zehr principles.

The method of inquiry the trial judge followed did not comply

with the mandates of Rule 431(b) because the remaining five

jurors were never asked specific questions concerning each of the

four Zehr principles.  See Glasper, 234 Ill. 2d at 189 ("[t]he

trial court committed error when it ignored our long-standing

8

precedent and our rules by refusing to question the venire in accordance with Rule 431(b)(4)"); People v. Magallanes, No. 1-07-2826, slip op. at 15 (December 23, 2009) ("the court failed to ascertain whether all of the potential jurors understood and accepted the fourth Zehr principle").

Based on the record before us, we find the trial judge violated Supreme Court Rule 431(b) by asking the prospective jurors whether they agreed with "[t]he principles of law," he described much earlier, the sort of general question Rule 431(b) sought to prohibit. The trial judge violated Rule 431(b) when he did not inform the prospective jurors of all four Zehr principles followed by a timely opportunity to respond to specific questions concerning their acceptance and understanding of the principles set out in the rule.

## Plain Error

The parties agree that defense counsel did not object to the judge's failure to comply with Supreme Court Rule 431(b) and defense counsel did not raise the trial judge's violation in his posttrial motion. "An unbroken line of precedent mandates that a defendant must object to claimed errors at trial and raise them in his posttrial motions." People v. Martinez, 386 Ill. App. 3d 153, 163, 897 N.E.2d 879 (2008), citing People v. Banks, 161 Ill. 2d 119, 143, 641 N.E.2d 331 (1994). "Otherwise, they are

9

procedurally defaulted or forfeited." Martinez, 386 Ill. App. 3d at 163, citing People v. Naylor, 229 Ill. 2d 584, 893 N.E.2d 653 (2008).

The defendant maintains, however, that the omission by the trial judge is reviewable under the plain error doctrine. See People v. Hammonds, No. 1-08-0194, slip op. at 41 (February 11, 2010) ("Since defendant did not object at trial or raise this issue in his posttrial motion, we review the issue under the plain-error doctrine").

"[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." People v. Piatkowski, 225 Ill. 2d 551, 565, 870 N.E.2d 403 (2007), citing

People v. Herron, 215 Ill. 2d 167, 186-87,
830 N.E.2d 467 (2005).

The defendant alleges error only under the second prong of plain error.  He argues that the error itself was so serious that it affected the integrity of the judicial process and requires automatic reversal.  Under the second-prong analysis, if the defendant proves the error occurred, "[p]rejudice to the defendant is presumed because of the importance of the right involved."  Herron, 215 Ill. 2d at 187.

*Two Lines of Cases*

Whether a violation of Rule 431(b) is a second-prong plain error is the source of divergent lines of cases.  The supreme court issued supervisory orders on both sides of the issue, directing that the decisions be reconsidered in light of Glasper. See Hammonds, No. 1-08-0194, slip op. at 49 (Justice R. Gordon provides a complete list of the cases vacated by the supreme court).

We add our decision to the line of cases finding no second-prong plain error decided since the supreme court ordered the issue be reconsidered in light of Glasper.  We note that at the time of this decision, People v. Thompson, No. 1-07-2891 (July 16, 2009), appeal allowed, 234 Ill. 2d 547 (2009), is pending before the supreme court.  In Thompson, the First District, in an

11

unpublished decision under Rule 23, held a violation of Rule 431(b) constituted plain error under the second prong, triggering automatic reversal.

In Glasper, our supreme court addressed whether the circuit court's failure "to conduct voir dire in accordance with Zehr and Rule 431(b)" is subject to harmless-error analysis. Glasper, 234 Ill. 2d at 185. The supreme court found "[t]he trial court committed error when it ignored our long-standing precedent and our rules by refusing to question the venire in accordance with Rule 431(b)(4)." Glasper, 234 Ill. 2d at 189. Our supreme court ruled that harmless-error analysis applies to a violation of the 1997 version of Rule 431(b)(4). Glasper, 234 Ill. 2d at 185.

The 2007 version of Rule 431(b) at issue before us places a sua sponte duty on the circuit court to ask each of the Zehr questions. Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007; Graham, 393 Ill. App. 3d at 273. The 1997 version required that each of the Zehr questions be asked of the venire only upon request of the defendant, a request defendant Glasper made. 177 Ill. 2d R. 431(b); Glasper, 234 Ill. 2d at 187.

The dispositive question before us is whether the 2007 amendment to Rule 431(b), imposing a sua sponte duty upon the circuit court, changed the analysis we must follow regarding a

12

violation of the rule from one where harmless error applies, such that automatic reversal is rejected, to one where prejudice is presumed under the second prong of the plain error doctrine, such that automatic reversal is mandated. See Glasper, 234 Ill. 2d at 189 ("We are called upon to determine whether the trial court's error requires us to presume prejudice and automatically reverse defendant's conviction, or whether the error is subject to harmless-error analysis").

According to the State, because a violation of the 1997 version of Rule 431(b) is subject to harmless error under Glasper, a violation of the 2007 version of the rule, to which no substantive language change was made, cannot create "an error so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." Piatkowski, 225 Ill. 2d at 565, citing Herron, 215 Ill. 2d at 186-87.

The defendant contends the Glasper holding does not apply to his case. He points to the express language in Glasper: "[T]his holding is limited to the version of Rule 431(b)(4) that was in effect at the time of the instant trial, and would not necessarily apply to subsequent versions of the rule." Glasper, 234 Ill. 2d at 200. The supreme court also made clear that it did not hold, in the context where the error was preserved, "that

13

a Rule 431(b)(4) violation could never result in reversible error." Glasper, 234 Ill. 2d at 200. Relying on the express limitation in the Glasper decision, various appellate decisions have since determined Glasper is inapplicable to cases involving the 2007 version of the rule. See, e.g., People v. Anderson, No. 1-07-1768 (March 29, 2010) (Anderson II); People v. Yusuf, No. 4-08-0034 (February 4, 2010) (Yusuf II).

In Yusuf II, the Fourth District held "the trial court's failure to fully comply with the amended version of Rule 431(b) caused 'a complete breakdown of the judicial process that undermines this court's confidence in the jury's verdict.' " Yusuf II, slip op. at 12, quoting People v. Owens, 394 Ill. App. 3d 148, 153, 914 N.E.2d 1280 (2009). In reconsidering in light of Glasper, the Yusuf II court relied on the very same language the defendant asserts to argue that a second-prong plain error occurred: "[T]he supreme court expressly limited its holding in Glasper to the preamended version of Rule 431(b)." Yusuf II, slip op. at 13. Anderson II followed much the same analysis.

We acknowledge reasonable grounds exist, as expressed in Yusuf II, Anderson II, and the dissent in this case, to disagree on the plain error issue before us. The supreme court in Glasper expressly held that its decision might not apply to the 2007 version of Rule 431(b), a version in existence at the time the

14

_Glasper_ decision was issued in 2009, while the court's supervisory orders, vacating decisions on both sides of the issue, directed the lower courts to reconsider the decisions in light of _Glasper_. We read the two directives to mean that we should not look to the holding in _Glasper_ to control our decision but we may look to the reasoning in _Glasper_ to determine whether it nonetheless applies to the 2007 version of Rule 431(b). We find the reasoning in _Glasper_ to apply with equal force here.

*No Fundamental Right Involved*

The supreme court in _Glasper_ noted its traditional "reluctance to hold that automatic reversal was required for a violation of a 'right' conferred upon defendants by a rule of [the supreme] court." _Glasper_, 234 Ill. 2d at 197, quoting _People v. Daniels_, 172 Ill. 2d 154, 165, 665 N.E.2d 1221 (1996). It observed the Supreme Court of the United States has recognized errors as " 'subject to automatic reversal *** only in a "very limited class of cases." ' " _Glasper_, 234 Ill. 2d at 198, quoting _Neder v. United States_, 527 U.S. 1, 8, 144 L. Ed. 2d 35, 46, 119 S. Ct. 1827, 1833 (1999), quoting _Johnson v. United States_, 520 U.S. 461, 468-69, 137 L. Ed. 2d 718, 728, 117 S. Ct. 1544, 1549-50 (1997). The Illinois Supreme Court observed that the trial court's error in _Glasper_, to follow long-established precedent and the clear language of Rule 431(b), did not "involve

15

No. 1-08-1370

a fundamental right, or even a constitutional protection."
Glasper, 234 Ill. 2d at 193. Because the error involving the
1997 version of Rule 431(b) did not involve a fundamental right
or constitutional protection, the supreme court examined the
legal grounding for defendant Glasper's claim that the error
should give rise to a presumption of prejudice.

While noting that in a different case a violation of Rule
431(b)(4) might constitute reversible error, the supreme court
determined that "the trial court's error [in Glasper] was
harmless beyond a reasonable doubt." Glasper, 234 Ill. 2d at 203
(noting "several federal appellate courts" have determined that
Zehr-type jury instruction errors "may be deemed harmless where
the evidence is overwhelming"). In other words, a clear
violation of the 1997 version of Rule 431(b), with or without a
timely objection, would not give rise to a presumption of
prejudice (as a second-prong plain error would). See Herron, 215
Ill. 2d at 187 (where a second-prong error is proved,
"[p]rejudice to the defendant is presumed because of the
importance of the right involved").

The Glasper court rejected the defendant's claim that
prejudice should be presumed because "automatic reversal is not
even required in cases where the prosecution makes an erroneous
reference to a defendant's decision to exercise his

16

constitutional right to remain silent in violation of <u>Doyle v. Ohio</u>, 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245 (1976)." <u>Glasper</u>, 234 Ill. 2d at 198. It would be incongruous to require automatic reversal for a judge's failure to ascertain a juror's understanding and acceptance that a "defendant's failure to testify cannot be held against him or her" when it has repeatedly been held that a violation of that same constitutional right by a prosecutor in the course of a trial is subject to harmless-error analysis, thus precluding automatic reversal. <u>Glasper</u>, 234 Ill. 2d at 198, citing <u>People v. Dameron</u>, 196 Ill. 2d 156, 164-66, 751 N.E.2d 1111 (2001). To find otherwise would result in anomalous outcomes, granting automatic reversal when a jury is not informed of the principle, but rejecting automatic reversal when the principle itself is violated during the course of a trial. <u>Glasper</u>, 234 Ill. 2d at 198.

An automatic reversal for a violation of the 1997 version of Rule 431(b) would also engender tension with well-established case law that juries are presumed to act as instructed:

> "We reject the idea that the trial court's
> failure to conduct Rule 431(b)(4) questioning
> makes it inevitable that the jury was biased,
> particularly when the record before us

17

demonstrates that the jurors in this case were both admonished and instructed against forming an adverse inference against defendant based on his decision not to testify. To do so would require us to presume that citizens sworn as jurors ignore the law and the jury instructions given to them. This notion is contrary to our precedent which instructs us to make the opposite presumption." Glasper, 234 Ill. 2d at 201, citing People v. Taylor, 166 Ill. 2d 414, 438, 655 N.E.2d 901 (1995) ("The jury is presumed to follow the instructions that the court gives it").

Given the reasoning of the supreme court in Glasper, we are persuaded that its analysis applies with equal force against a presumption-of-prejudice finding that a second-prong plain error would trigger in this case. Critical to our holding is the defendant's failure to marshal a persuasive reason that the 2007 amendment to Rule 431(b), imposing a sua sponte duty on the circuit court, makes full compliance with the rule indispensable to a fair trial for him, as he argues for a second-prong plain error, but the trial judge's erroneous denial of the defendant's

request that a specific Zehr question be asked of the venire was not indispensable to a fair trial for defendant Glasper. As we see it, the change to Rule 431(b) in the 2007 amendment did not alter the right in question: it remains neither "a fundamental right, [nor] even a constitutional protection." Glasper, 234 Ill. 2d at 193. In the absence of a cogent reason to find the instant defendant's situation substantively different from the situation of defendant Glasper, we are persuaded that the supreme court's reasoning in Glasper applies to the 2007 version of Rule 431(b), which means its violation does not give rise to a presumption of prejudice.

Consistent with the First District cases that reject a violation of Rule 431(b) as a second-prong plain error-- Magallanes, No. 1-07-2826; Hammonds, No. 1-08-0194--the error committed by the trial judge in this case did not trigger automatic reversal.

CONCLUSION

The trial judge violated Supreme Court Rule 431(b) when he did not inform the prospective jurors, either individually or in a group, about each Zehr principle followed by a timely opportunity to respond to specific questions concerning their acceptance and understanding of the principles set out in the rule. The error, however, does not involve a fundamental right

19

or constitutional protection, such that prejudice is presumed upon proof of the error under the second prong of the plain error doctrine. Because the defendant does not contend the error by the trial judge was plain error under the first prong, the error concerning the trial judge's failure to adhere to Rule 431(b) is forfeited.

Affirmed.

PATTI, J., concurs.

Hall, P.J., dissents.

PRESIDING JUSTICE HALL dissenting:

I agree with the majority's conclusion that the trial court violated Supreme Court Rule 431(b) (Official Reports Advanced Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007). I disagree, however, with the majority's finding that the error does not warrant reversal under the second prong of the plain-error analysis.

I believe that word deletions in the 2007 amendment to Rule 431(b) alter our analysis from that of People v. Glasper, 234 Ill. 2d 173, 917 N.E.2d 401 (2009). In Glasper, the rule at issue was the 1997 version of Rule 431(b), which required trial courts to question prospective jurors about the Zehr principles only if requested to do so by defense counsel. Glasper, 234 Ill. 2d at 187.

20

The 1997 version of Rule 431(b) actually represented a compromise. See People v. Alexander, 396 Ill. App. 3d 563, 580, 919 N.E.2d 1016 (2009) (McDade, J., concurring in part and dissenting in part). The Supreme Court Rules Committee initially recommended that trial courts be required to question prospective jurors on each of the four Zehr principles. Alexander, 396 Ill. App. 3d at 580 (McDade, J., concurring in part and dissenting in part); Glasper, 234 Ill. 2d at 187. The supreme court rejected the recommendation and instead added subsection (b), requiring trial courts to undertake such questioning only if requested by defendant. Alexander, 396 Ill. App. 3d at 580 (McDade, J., concurring in part and dissenting in part); see also Glasper, 234 Ill. 2d at 200 ("As previously stated, when crafting the version of Rule 431(b) applicable here, this court had the opportunity to mandate Zehr questioning in every case, but chose not to. Instead, this court made the right to Zehr questioning permissive").

In 2007, the supreme court amended Rule 431(b), this time adopting the procedure it had rejected 10 years earlier. Alexander, 396 Ill. App. 3d at 580 (McDade, J., concurring in part and dissenting in part). The 2007 amendment deleted the words: "If requested by the defendant." Official Reports Advanced Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007). The

21

deletion had the effect of imposing an affirmative sua sponte duty on trial courts to question prospective jurors about the Zehr principles, even absent a request by defendant. See People v. Graham, 393 Ill. App. 3d 268, 273, 913 N.E.2d 99 (2009).

Rules of statutory construction apply equally to the interpretation of supreme court rules. People v. Roberts, 214 Ill. 2d 106, 116, 824 N.E.2d 250 (2005). Every amendment to a rule is presumed to have a purpose, and a court must consider the language of the amendment in light of the need for the amendment and the purpose it serves. People v. Allen, 313 Ill. App. 3d 842, 846, 730 N.E.2d 1216 (2000).

In amending Rule 431(b), by deleting the words: "If requested by the defendant," our supreme court evidently determined that the Zehr principles are so integral to the selection of an impartial jury, and thus a fair trial, that trial courts should be required to raise them sua sponte even if not requested to do so by defense counsel. The majority's interpretation of the 2007 version of Rule 431(b) renders meaningless the deletion of the words: "If requested by the defendant."

In light of the mandatory language of the 2007 amended version of Rule 431(b), I believe that the trial court's failure to fully comply with the rule denied defendant a fair trial and

22

was so fundamental an error that reversal is required under the
second prong of the plain-error analysis.

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**

---

THE PEOPLE OF THE STATE OF ILLINOIS,
      Plaintiff-Appellee,

  v.

JAMES WHEELER,
      Defendant-Appellant.

---

**No. 1-08-1370**

**Appellate Court of Illinois**
**First District, First Division**
**Opinion Filed March 31, 2010**
**Corrected Opinion Filed: May 11, 2010**

---

**JUSTICE GARCIA delivered the opinion of the court.**

**PATTI, J., concurs.**
**HALL, P.J., dissents.**

---

**Appeal from the Circuit Court of Cook County**
**Honorable Lawrence W. Terrell, Judge Presiding**

---

| For DEFENDANT-APPELLANT | Adrienne River
PATRICIA UNSINN, Deputy Defender
MICHAEL J. PELLETIER, State Appellate Defender
Office of the State Appellate Defender
203 N. LaSalle St., 24th Floor
Chicago, IL 60601 |
| --- | --- |
| For PLAINTIFF- | James F. Fitzgerald |

No. 1-08-1370

**APPELLEE**            **Mary L. Boland**
**Brian W. Reidy**
**ANITA ALVAREZ, State's Attorney**
**County of Cook**
**Room 309 - Richard J. Daley Center**
**Chicago, Illinois 60602**